# EXHIBIT B

## AMENDED AND RESTATED EMPLOYMENT CONTRACT

AMENDED AND RESTATED EMPLOYMENT CONTRACT, dated as of December 28, 2006 (this "Contract" or this "Employment Contract"), between EATERIES, INC. (the "Company"), and J.B. Edwards, an Oklahoma resident ("Edwards").

Edwards currently serves as the Chief Accounting Officer and Vice President of the Company.

The Company and Edwards are parties to an Employment Contract dated as of January 1, 2006 (the "Existing Employment Agreement").

On the date hereof, the Company is entering into an Agreement and Plan of Reorganization and Merger (the "Purchase Agreement") among the Company, Eateries Holdings, LLC, Fiesta L.L.C., the members of Eateries Holdings, LLC, certain of the shareholders of the Company, Eateries Acquisition, LLC (the "Purchaser") and certain other parties, pursuant to which the Company is being acquired by the Purchaser (the "Acquisition").

The Company and Edwards are party to the agreements listed on Schedule I hereto (the "Existing Stock Agreements").

The Purchase Agreement requires that the Company and Edwards execute and deliver this Contract, which amends and restates the Existing Employment Agreement and terminates all of the Existing Stock Agreements, in each case, effective as of "Closing Date" (such term being used herein as defined in the Purchase Agreement).

The Company and Edwards understand that the entering into and the effectiveness of this Contract is a material inducement to the Purchaser to enter into the Purchase Agreement and consummate the Acquisition, and therefore, the Purchaser is being made a third party beneficiary of this Contract.

NOW THEREFORE, Edwards and the Company, in consideration of the mutual covenants and promises herein contained do hereby amend and restate the Existing Employment Agreement as of the date and time provided in Section 9 below and otherwise agree as follows:

1. <u>Term</u>. The Company shall continue to employ Edwards, and Edwards shall serve as an employee of the Company, on the terms and conditions of this Employment Contract for an initial term commencing on the Closing Date, and ending on the twelve month anniversary of the Closing Date, unless extended or terminated earlier as hereinafter provided (the term of this Contract, the "Term"). The initial twelve month term of this Employment Contract shall be automatically extended for an additional twelve month term upon the expiration of such initial term and upon the expiration of each such additional twelve month term unless Edwards is given written notice by the Company six months prior to the date that the Term is otherwise to be automatically extended pursuant to this sentence.

2. <u>Duties and Services</u>. During the Term hereof Edwards shall be employed in the business of the Company and its affiliates and shall perform such services diligently, faithfully

and consistent with his assigned responsibilities. In performance of his duties Edwards shall report to the Chief Executive Officer and the Board of Directors of the Company. Edwards shall be available to travel as the needs of the business require.

3. <u>Compensation</u>. As compensation for his services hereunder, the Company shall pay Edwards, during the Term, a salary payable in equal bi-weekly installments at the annual rate of $150,000.

4. <u>Expenses and Vacation</u>. Edwards shall continue to receive his current benefits for health care during the term hereof. Edwards shall be entitled to reimbursement for reasonable travel and other out-of-pocket expenses necessarily incurred in the performance of his duties hereunder, upon submission and approval of written statements and bills in accordance with the then regular policies and procedures of the Company. Edwards shall be entitled to vacations in accordance with the then regular policies and procedures of the Company governing executives

5. <u>Representations and Warranties of Edwards</u>. Edwards represents and warrants to the Company that (a) he is under no contractual or other restriction or obligation which is inconsistent with the execution of this Contract, the performance of his duties hereunder, or the other rights of the Company hereunder and (b) he is under no physical or mental disability that would hinder his performance of duties under this Employment Contract.

6. <u>Confidential Information</u>. All trade secrets, or other proprietary or confidential information which Edwards may now possess, may obtain during or after the Term hereof, or may create prior to the end of the period Edwards is employed by the Company under this Contract or otherwise relating to the business of the Company or its affiliates shall not be published, disclosed, or made accessible by him to any other person, firm, or corporation either during or after the termination of his employment or used by him except during the Term hereof in the business and for the benefit of the Company and/or its affiliates. Edwards shall return all tangible evidence of such trade secrets, or other proprietary or confidential information to the Company prior to or at the termination of his employment. "Trade secrets" shall include, but not be limited to, recipes developed or utilized by the Company and/or its affiliates, as well as methods of operations developed and utilized by the Company and/or its affiliates.

Additionally, during the Term hereof, Edwards shall not acquire, directly or indirectly, any interest in any restaurants or other businesses, unless specifically authorized by the Board of Directors of the Company in writing or unless operating under a license or franchise agreement and using the name Garfield's. Notwithstanding the foregoing, Edwards shall not be prevented from owning any securities of any competitor of the Company which are regularly traded on any national securities exchange or in the over-the-counter market; provided, that the same shall not result in Edwards and his immediate family owning, legally or beneficially, at any time, one percent (1%) or more of the voting securities of any such company. In the event that the provisions of this section should ever be deemed to exceed the time, geographic or occupational limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic, or occupational limitations permitted by applicable law.

7. <u>Termination</u>. Notwithstanding anything herein contained, if during the Term hereof,

3306798_4                                             2

(a) either (i) Edwards shall be physically or mentally incapacitated or disabled or otherwise unable fully to discharge his duties hereunder for a period of six (6) months (as reasonably determined by the Company), (ii) Edwards shall be indicted or convicted of a felony crime or any other crime of moral turpitude, (iii) Edwards shall commit any act or omit to take any action in bad faith and to the substantial detriment of the Company, or (iv) Edwards shall breach any term of this Contract and such breach shall cause a substantial detriment to the Company and he shall fail to cure and correct such breach within ten (10) days after notice to Edwards by the Company of the same, or such longer period as may be agreed to by the Company then, and in each case, the Company shall have the right to immediately terminate the employment of Edwards hereunder (upon written notice to him) without any further obligation to Edwards other than to pay him salary at the rate provided in Section 3 to the date of the termination; or

(b) Edwards shall die, then this Employment Contract shall terminate on the date of Edwards' death (whereupon Edwards' estate shall be entitled to receive only his salary at the rate provided in Section 3 to the date on which termination shall take effect); or

(c) the Company shall elect (by written notice to Edwards) to terminate his employment hereunder for any reason (or no reason) under circumstances other than those described in clauses (a) or (b) above, Edwards shall be entitled to receive salary at the rate provided in Section 3 in accordance with the Company's normal payroll procedures to the six month anniversary of his termination, provided that Edwards signs a release of claims in form and substance reasonably satisfactory to the Company.

(d) the Company shall materially breach any term of this Contract and shall fail to cure and correct such breach within ten (10) days after notice to the Company by Edwards of the same, or such longer period as may be agreed to by Edwards, Edwards shall be entitled to terminate his employment hereunder and receive salary at the rate provided in Section 3 in accordance with the Company's normal payroll procedures to the six month anniversary of his termination, provided that Edwards signs a release of claims in form and substance reasonably satisfactory to the Company.

8. <u>Merger, Et Cetera</u>. In the event of a future disposition of (or including) the properties and business of the Company, substantially as an entirety, by merger, consolidation, sale of assets, or otherwise, then the Company may elect:

(a) to assign this Contract and all of its rights and obligations hereunder to the acquiring or surviving entity; or

(b) in addition to its other rights of termination, to terminate this Contract under Section 7(c) above.

9. <u>Amendment and Restatement of Existing Employment Agreement; Termination of Existing Stock Agreements; Release</u>. This Contract shall amend and restate, supersede and replace the Existing Agreement in its entirety, effective on the Closing Date immediately prior to the consummation of the "Closing" (such term being used herein as defined in the Purchase

Agreement). In addition, effective on the Closing Date immediately prior to the consummation of the Closing, each of the Existing Stock Agreements shall be terminated in their entirety and all rights and obligations of the parties thereto shall be extinguished. The Company and Edwards acknowledge and agree (and represent and warrant to the Purchaser) that notwithstanding anything to the contrary contained in the Existing Stock Agreements, no shares of capital stock or other Equity Securities were ever issued under such Existing Stock Agreements. Effective on the Closing Date immediately prior to the consummation of the Closing, Edwards on his own behalf and on behalf of his past, present and future affiliates, agents, attorneys, administrators, heirs, executors, spouses, trustees, beneficiaries, representatives, successors and assigns, hereby absolutely, unconditionally and irrevocably RELEASES and FOREVER DISCHARGES the Company, the Purchaser and each of the other Acquired Companies (as defined in the Purchase Agreement) and each of their respective past, present, or future parent entities, divisions, affiliates, direct and indirect subsidiaries, related business entities, stockholders, members, partners, limited partners, their respective present and former directors, managing directors, officers, control persons, stockholders, employees, agents, attorneys, administrators, representatives, successors and assigns (each, a "Released Party" and, collectively, the "Released Parties") from the following: all claims, demands, indebtedness, liabilities, obligations, actions, causes of action, contracts, accounts, suits, arbitrations, debts, agreements, damages, fees, costs and/or expenses of every kind or character whatsoever, whether known or unknown, accrued or unaccrued, liquidated or unliquidated, whether sounding in tort, contract or otherwise (collectively, "Claims"), which are, were, or could have been asserted against any of the Released Parties from the beginning of the world to the date and time of delivery of the release set forth in this Section 9 including, without limitation, to the extent such Claims arise out of or relate to the Existing Stock Agreements, the Existing Employment Agreement, the Acquired Companies, the Contemplated Transactions (as defined in the Purchase Agreement) or any actual or alleged equity or ownership interest in the Company (any such equity or other interest being hereby forfeited and transferred to the Company as of the effective time of this Release in consideration of the entering into of this Contract and for no additional consideration) (all such released matters being herein referred to collectively as the "Released Claims"); provided, however, Released Claims shall not include any of the obligations or liabilities of the Company arising under the terms of this Contract on or after the Closing Date or the Purchase Agreement or any claims for accrued salary or benefits arising in the ordinary course prior to the Closing Date. In the event of any termination of the Purchase Agreement prior to the Closing, this Contract shall be terminated and the Existing Employment Agreement shall be reinstated. If from time to time requested by the Company or the Purchaser, Edwards agrees that he shall execute and deliver any further instruments or agreements necessary or appropriate to give effect to or evidence the foregoing.

10.  Survival. The covenants, agreements, representation, and warranties contained in or made pursuant to this Employment Contract shall survive Edwards' termination of employment, irrespective of any investigation made by or on behalf of any party.

11.  Modification. This Employment Contract sets forth the entire understanding of the parties with respect to the subject matter hereof, and may be modified only by a written instrument duly executed by each party (and only with the express prior written consent of the Purchaser).

12. **Notices.** Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be mailed by certified mail, return receipt requested, or delivered against receipt, to the party to whom it is to be given at the then address of such party (or to such other address as the party shall have furnished in writing). Notice to the estate of shall be sufficient if addressed to Edwards as provided in this Section 12. Any notice or other communication given by certified mail shall be deemed given at the time of certification thereof, except for a notice changing a party's address which shall be deemed given at the time of receipt thereof.

13. **Waiver.** Any waiver by either party of a breach of any provision of this Contract shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any provision in this Contract. The failure of a party to insist upon strict adherence to any term of this Contract on one or more occasions shall not be considered a waiver or deprive that party of the right hereafter to insist upon strict adherence to that term or any other term of this Contract. Any waiver must be in writing and signed by the parties (and only with the express prior written consent of the Purchaser).

14. **Binding Effect.** Edwards' rights and obligations under this Contract shall not be transferable by assignment or otherwise, such rights shall not be subject to commutation, encumbrance, or the claims of Edwards' creditors, and any attempt to do any of the foregoing shall be void. The provisions of this Contract shall be binding upon and inure to the benefit of Edwards and his heirs and personal representatives, and shall be binding upon and inure to the benefit of the Company and its successors and those who are its assigns. The Purchaser is an express third party beneficiary of this Contract, entitled to enforce this Contract as if a party hereto.

15. **No Other Third Party Beneficiaries.** This Employment Contract does not create, and shall not be construed as creating, any rights enforceable by any person not a party to this Employment Contract (except as provided in Section 14).

16. **Headings.** The headings in this Employment Contract are solely for the convenience of reference and shall be given no effect in the construction or interpretation of this Contract.

17. **Counterparts: Governing Law.** This Employment Contract may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. It shall be governed by and construed in accordance with the laws of the State of Oklahoma, without giving effect to its conflict of laws rules or statutory provisions.

IN WITNESS WHEREOF, the parties have duly executed this Amended and Restated Employment Contract as of the date first above written.

EATERIES, INC.

By: _____
James M. Burke, President

By: _____
J.B. Edwards

Schedule I

Existing Stock Agreements

1. Eateries, Inc. Stock Agreement (Tenure Shares) between the Company and Edwards dated as of March 1, 2005.

2. Eateries, Inc. Stock Agreement (Purchase Shares) between the Company and Edwards dated as of March 1, 2005.

3. Eateries, Inc. Stock Agreement (Performance Shares) between the Company and Edwards dated as of March 1, 2005.