UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                               :

JAMES M. BURKE, et al.,            :

                               :

              Plaintiffs,        :   Civil Action No.:  07-9909 (HB)(HBP)

                               :

     -against-               :

                               :

HESTIA HOLDINGS, LLC, et al.,     :

                               :

            Defendants.      :

                               :

-------------------------------------------------------------- x
                               :

HESTIA HOLDINGS, LLC, et al.,     :

                               :

           Counterclaimants,   :

                               :

     -against-               :

                               :

JAMES BURKE, et al.,           :

                               :

           Counterclaim Defendants.  :

-------------------------------------------------------------- x

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR PARTIAL DISMISSAL OF COUNTERCLAIMS

---

                      ENTWISTLE & CAPPUCCI LLP
                      280 Park Avenue, 26th Floor West
                      New York, New York 10017
                      (212) 894-7200

                      PHILLIPS MCFALL MCCAFFREY
                       MCVAY & MURRAH, P. C.
                      Corporate Tower, 13th Floor
                      101 N. Robinson
                      Oklahoma City, Oklahoma 73102
                      (405) 235-4100
                      (Pro Hac Vice Applications Pending)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 4

ARGUMENT ............................................................................................................................ 6

POINT I.

THE CONTROLLING LEGAL STANDARD.................................................................. 6

POINT II.

THE IMPLIED COVENANT CLAIM FAILS
BECAUSE IT MIRRORS THE CLAIM
FOR BREACH OF EXPRESS CONTRACT .................................................................. 7

    A.    The $150,000.00 Payment........................................................................ 8

    B.    Reduced Advertising ................................................................................ 8

    C.    Overdue Payables ..................................................................................... 9

    D.    Payment of Sellers' Personal Expenses ................................................... 9

    E.    The Laundry List of Alleged Bad Acts .................................................... 9

POINT III.

THE PRIMA FACIE TORT CLAIM
FAILS AS A MATTER OF LAW ................................................................................. 12

    A.    The Underlying Conduct
         Is Not Alleged to Be Lawful ................................................................... 13

    B.    The Underlying Conduct Falls Squarely Within
         The Ambit of More Traditional Tort Theories.......................................... 15

POINT IV.

THE FIDUCIARY DUTY CLAIM
TRACKS THE BREACH OF CONTRACT CLAIM
AND THUS FAILS AS A MATTER OF LAW .............................................................. 16

POINT V.

ABSENT A BREACH OF FIDUCIARY DUTY,
THE AIDING AND ABETTING CLAIM FAILS
AS A MATTER OF LAW AND COMMON SENSE.........................................................20

CONCLUSION..................................................................................................................21

# TABLE OF AUTHORITIES

## Federal Cases

Banco Nacional De Cuba v. Chase Manhattan Bank,
   658 F.2d 875 (2d Cir. 1981)......................................................................................... 5

Chira v. Columbia University,
   289 F. Supp. 2d 477 (S.D.N.Y. 2003)......................................................................... 7

In re Xenathol Corp. Securities Litigation,
   2007 WL 2572088 (S.D.N.Y. Sept. 7, 2007)............................................................... 6

Lazar's Auto Sales, Inc. v. Chrysler Financial Corp.,
   83 F. Supp. 2d 384 (S.D.N.Y. 2000).......................................................................... 12

Patane v. Clark,
   508 F.3d 106 (2d Cir. 2007)......................................................................................... 6

## State Cases

Anderson v. Airco, Inc.,
   2004 WL 2827887 (Del. Super. Ct. Nov. 30, 2004)................................................... 20

BAE Systems North America Inc. v. Lockheed Martin Corporation,
   2004 WL 1739522 (Del. Ch. Aug. 3, 2004) ............................................................... 18

Belsky v. Lowenthal,
   62 A.D.2d 319, 405 N.Y.S.2d 62 (lst Dep't 1978) .................................................... 13

Blue Chip Capital Fund II Limited Partnership v. Tubergen,
   906 A.2d 827 (Del. Ch. 2006)...................................................................................... 18

Brett v. Berkowitz,
   1995 WL 270146 (Del. Super. Apr. 13, 1995) ........................................................... 15

Cerberus International Ltd. v. BancTec, Inc.,
   16 A.D.3d 126, 791 N.Y.S.2d 28 (1st Dep't 2005) .................................................... 11

Forsythe v. ESC Fund Management Co. (U.S.), Inc.,
   2007 WL 2982247 (Del. Ch. Oct. 9, 2007)…………………………………………..20

Gale v. Bershad,
   1998 WL 118022 (Del. Ch. March 4, 1998)............................................................... 18

Izquierdo v. Sills,
   2004 WL 2290811 (Del. Ch. June 29, 2004)............................................................... 11

Kaye v. Pantone, Inc.,
   395 A.2d 369 (Del. Ch. 1978)...................................................................................... 12

Lessig Nuclear Associates, P.A. v. Meckelnburg,
  2003 WL 2549140 (Pa. Com. Pl. Feb. 21, 2003)(Trial Order)........................................... 18, 19

Lord v. Souder,
  748 A.2d 393 (Del. 2000) ............................................................................................. 12, 13, 15

Madison Realty Partners 7, LLC v. AG ISA, LLC,
  2001 WL 406268 (Del. Ch. April 17, 2001)....................................................................... 18, 20

Moore Business Forms, Inc. v. Cordant Holdings Corporation,
  1995 WL 662685 (Del. Ch. Nov. 2, 1995) ............................................................................... 11

Nix v. Sawyer,
  466 A.2d 407 (Del. Super. 1983)............................................................................................. 12

Ramunno v. Cawley,
  705 A.2d 1029 (Del. 1998) .................................................................................................... 20

Solow v. Aspect Resources, LLC,
  2004 WL 2694916 (Del. Ch. Oct. 19, 2004)…………………………………………………18

## Statutes and Rules

Fed. R. Civ. P. 12(b)(6)…………………………………………………………...1, 2, 6, 7, 8

Fed. R. Civ. P. 13(a)…………………………………………………………………………5

Fed. R. Civ. P. 13(b)…………………………………………………………………………5

## Miscellaneous

C. W. Wright & Miller, Federal Practice and Procedure § 1404..................................... 5

E.A. Farnsworth, Contracts § 7.17 (1999) .................................................................... 11

K.J. Vandevelde, The Modern Prima Facie Tort Doctrine, 79 Ky. L. J. 519 (1991) ................... 12

## PRELIMINARY STATEMENT

Counterclaim Defendants James M. Burke and Bradley L. Grow, in their capacity as Sellers' Representatives, along with Eateries Holdings, LLC, James M. Burke, The Burke Family, LLC, Bradley L. Grow, The Grow Family LLC, The Bradley L. Grow Revocable Trust, Vincent F. Orza, Patricia L. Orza, Patricia Landi Orza Trust, Alexandra Maria Orza Trust, Patricia L. Orza Trust, Vincent F. Orza, Jr. Trust, J.B. Edwards, Doug Davis, Phillips, McFall, McCaffrey, McVay and Murrah 401K Profit Sharing Plan, D. Keith McFall and Bill Totty (collectively, "Sellers" or "Counterclaim Defendants"), respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for the partial dismissal of the claims brought by Counterclaimants Hestia Holdings LLC, Eateries, Inc. and Fiesta Holdings, Inc. (collectively, "Purchasers" or "Counterclaimants"). The counterclaims were asserted in the Answer and Counterclaims filed on or about November 29, 2007 (the "Counterclaims").

This dispute arises out of the sale in 2006 of three restaurant chains operating throughout the United States, and previously based in Oklahoma City, Oklahoma. Although Purchasers and Sellers once viewed the $30 million transaction as being mutually beneficial, one year after the closing the parties on both sides of the deal now claim to be aggrieved. Based on the Purchasers' failure to issue $5,000,000.00 in promissory notes to Sellers as additional consideration earned under the transaction, Plaintiffs James M. Burke and Bradley L. Grow filed their Complaint on November 8, 2007. Burke and Grow sued as designated Sellers' Representatives under the Agreement and Plan of Reorganization and Merger dated December 26, 2006 (the "Merger Agreement").

Sellers have asserted a straight-forward, single-count claim for breach of the detailed Merger Agreement. However, in an attempt to avoid their obligations under the Merger

Agreement, Purchasers have taken an entirely different approach. By means of what can only be described as a shotgun pleading, Purchasers wish to turn a simple contract dispute into a complex web of fraud and deception filled with scandalous allegations devoid of factual underpinning. By asserting a raft of claims ranging from breach of contract, breach of the obligation of good faith and fair dealing, and breach of fiduciary duty to conversion and fraud, Purchasers hope that one of their shotgun blasts will hit the mark and they can avoid paying the additional consideration owed. This motion targets that shotgun pleading.

Wading through the prolixity and confusion which mark the Counterclaims, it is clear that at least four of them -- those asserted in Counts II (breach of good faith), III (prima facie tort), IV (breach of fiduciary duty), and V (aiding and abetting breach of fiduciary duty) -- are legally deficient and should be dismissed at the outset, pursuant to Rule 12 (b) (6).

The overreaching nature of the Purchasers' pleading is manifest in each of the four counts challenged. As discussed in Point II below, the breach of the implied covenant of good faith and fair dealing claim in Count II cannot withstand analysis under controlling Delaware law. Instead of alleging and relying upon breaches of implied terms of the Merger Agreement, Purchasers rest their claim upon a litany of what they themselves characterize as breaches of express provisions of the agreement. Under controlling Delaware law, a claim for breach of the implied covenant of good faith fails if it is pegged to conduct also alleged to constitute a breach of the parties' express contract.

Purchasers' overreaching is also apparent in the purported prima facie tort claim asserted in Count III. As discussed below in Point III, the prima facie tort claim does not pass muster under Delaware law for two reasons. First, the Purchasers have failed to assert that the conduct allegedly giving rise to the claim was otherwise legal. To the contrary, the conduct

which the Purchasers attribute to the Sellers involves a series of alleged fraudulent acts. Second, the Purchasers cannot demonstrate that the underlying conduct falls outside of the ambit of more traditional theories of recovery sounding in tort. The fact is that the alleged underlying conduct falls squarely within any number of tort theories tied to misrepresentations and omissions of material fact. Indeed, the fraud claim asserted in Count VIII is based on precisely the same conduct that is the linchpin of Purchasers' prima facie tort claim.

Likewise, Purchasers' claims for breach of fiduciary duty and for aiding and abetting the breach of fiduciary duty also fall well short under Delaware law. As discussed in Point IV, the breach of fiduciary duty claim in Count IV against Counterclaim Defendant Mr. Edwards rests upon acts identical to and, indeed, literally copied and pasted from Purchasers' claim in Count VI that Mr. Edwards breached his employment contract with Purchasers. This runs afoul of Delaware law by threatening the primacy of contract over fiduciary law, thus failing to set forth a cognizable fiduciary duty.

Finally, as goes Count IV, so goes Count V. Since Purchasers' breach of fiduciary duty claim in Count IV fails, so does their claim of aiding and abetting such breach of duty in Count V. As discussed in Point V, under Delaware law, a claim of aiding and abetting does not constitute a separate cause of action. Since the breach of fiduciary duty claim must be dismissed, so must the dependent aiding and abetting claim.

## BACKGROUND

This dispute arises out of the sale in 2006 of three restaurant chains operating throughout the United States. See Counterclaims, ¶¶ 28, 34. Sellers conveyed the businesses to Purchasers under the Merger Agreement, a partial copy of which is attached as Exhibit A to the Counterclaims. The Merger Agreement contains a clause specifying that Delaware law governs all matters arising out of or relating to that agreement. See Merger Agreement, Article 13.3.

The purchase price of the restaurant businesses included aggregate consideration of $30,500,000.00 subject to certain adjustments, "Initial Sellers Notes" in the principal amount of $2,000,000.00 payable in five years, and additional "Earnout Notes" to be issued by Purchasers if certain performance goals were achieved during the twelve months ending December 31, 2006. See Merger Agreement, Article 2.5 (a) (i), (ii) and (iii). The Earnout Notes were keyed to the earnings before interest, taxes, depreciation and amortization ("EBITDA") experienced by the businesses during fiscal year 2006 as defined by the parties, subject to certain adjustments. See Merger Agreement, Article 2.7. Essentially, any EBITDA greater than $6,000,000.00 and less than $7,000,000.00 would be multiplied by five to arrive at the "EBITDA Amount," thus fixing the amount of the Earnout Notes, subject to a maximum of $5,000,000.00.

The sale of the businesses closed on December 29, 2006. See Counterclaims, ¶ 34. The businesses were in fact conveyed to Purchasers, who have owned and operated them ever since. Sellers contend that the agreed 2006 financial data were subsequently obtained and showed that the EBITDA for fiscal 2006 in fact equaled or exceeded $7,000,000.00, entitling them to the issuance of Purchaser's Earnout Notes in the sum of $5,000,000.00. See Complaint, ¶¶ 11-12. Despite Sellers' demand, Purchasers refuse to issue the Earnout Notes. Id., ¶ 13. Finally, on November 8, 2007, Plaintiffs James M. Burke and Bradley L. Grow, Sellers' designated representatives and attorneys-in-fact per Article 12.1 of the Merger Agreement, filed

4

this suit seeking to enforce the Sellers' right to the issuance of the Earnout Notes.  Plaintiffs

asserted a straight-forward, single-count claim for breach of the Merger Agreement consisting of

six paragraphs.  Id., ¶¶ 10-15.  In response, Purchasers unloaded their thirty-seven page

Counterclaims on November 29, 2007.[1]

---

[1]    Purchasers improperly characterize the Sellers collectively as "Counterclaim Defendants"
and purport to proceed against Sellers by "Counterclaims."  Counterclaims may only be asserted
against an "opposing party."  See Fed. R. Civ. P. 13(a) and (b), and C. W.  Wright & Miller,
Federal Practice and Procedure § 1404 at 18, and n.1.  Here, only James M. Burke and Bradley
L. Grow are plaintiffs under the Complaint.  Accordingly, the other fourteen "Counterclaim
Defendants", identified in paragraphs 10-23 of the Counterclaims, are not properly sued as
"opposing part[ies]" by counterclaim.  Id. Moreover, Mr. Burke and Mr. Grow sued in the
Complaint in their representative capacities.  See Complaint, ¶¶ 1, 16.  Accordingly, they are not
properly sued in their individual capacities.  See C. W. Wright & Miller, Federal Practice and
Procedure § 1404 at 19-20, and n.3 (the "general rule" is "that in an action brought in a
representative capacity, defendant cannot assert a counterclaim against plaintiff in his individual
capacity because it would not be a counterclaim against an `opposing party,'" citing, inter alia,
Pinoche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co., 206 F.2d 336, 337 (9th Cir.
1953) (a counterclaim against a trustee in his individual capacity, when he has sued as a
fiduciary only, is not proper inasmuch as it is not a counterclaim against an opposing party)); see
also Banco Nacional De Cuba v. Chase Manhattan Bank, 658 F.2d 875, 885 (2d Cir. 1981)
(concluding that a plaintiff in its individual capacity is not an "opposing party" within the
meaning of Fed. R. Civ. P. 13).

# ARGUMENT

## POINT I.

## THE CONTROLLING LEGAL STANDARD

A Rule 12 (b)(6) motion challenges the legal viability of one or more claims asserted in a pleading. As the Second Circuit has instructed:

> On a motion to dismiss, the issue is "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L.Ed.2d 139 (1984). In order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, (2007). In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)].

Patane v. Clark, 508 F.3d 106, 111-112 (2d Cir. 2007); see also In re Xenathol Corp. Sec. Lit., 2007 WL 2572088, at *2 (S.D.N.Y. Sept. 7, 2007)

For the reasons set forth below, the allegations of the Counterclaims are legally insufficient to support claims for breach of the obligation of good faith and fair dealing (Count II), prima facie tort (Count III), breach of fiduciary duty (Count IV) and aiding and abetting breach of fiduciary duty (Count V). The Counterclaim Defendants respectfully submit that those claims should be dismissed so as to narrow the scope of this dispute and spare the parties the cost and business disruption associated with litigating ill-conceived claims on which Counterclaimants have no legal right to relief.

6

**POINT II.**

**THE IMPLIED COVENANT CLAIM FAILS
BECAUSE IT MIRRORS THE CLAIM
FOR BREACH OF EXPRESS CONTRACT**

In Count II of the Counterclaims, Purchasers allege that the Counterclaim Defendants are liable for breach of the duty of good faith implied in the Merger Agreement. Count II consists of paragraphs 107-110, and further includes paragraphs 1-105 by express incorporation. The incorporated paragraphs include paragraph 95, wherein Purchasers further incorporate into the Counterclaims a Notice of Claim sent, according to Purchasers, on or about November 7, 2007. (A copy of the Notice of Claim is attached as Exhibit A to the accompanying Declaration of Robert M. Travisano, Esq. ("Travisano Decl.")). The purported breaches of the implied covenant of good faith in Count II are collected in subparts "a" through "e" of paragraph 109, as supplemented by the incorporated paragraphs and the Notice of Claim. These alleged breaches of the implied covenant, however, track the alleged breaches of the express contract (i.e., the Merger Agreement) alleged in Count I. As discussed below, under Delaware law a claim for breach of the implied covenant of good faith fails if the underlying conduct mirrors that conduct alleged to have constituted a breach of an express contract.

The Notice of Claim is properly considered on review under Rule 12 (b) (6). This Court has stated that "`[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint `relies heavily upon its terms and effect,´ which renders the document `integral´ to the complaint." Chira v. Columbia Univ., 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) quoting, in turn, Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.1995)). Paragraph 95 states in this connection that "[o]n or about November 7, 2007, Hestia sent counsel for Sellers' Representatives and Seller McFall a Notice of Claim pursuant to

7

Sections 10.1(e) and 10.6 of the Merger Agreement, setting forth Counterclaim Defendants' false and fraudulent practices and Hestia's claims against them [.]"  Purchasers expressly incorporate their discussion of the Notice of Claim in each of the Counts of the Counterclaims, including Count II.  See Counterclaims, ¶¶ 97, 107, 111, 115, 121, 125, 132, 138, 150, 154 and 159. Purchasers clearly rely upon and utilize the Notice of Claim in the Counterclaims, rendering it relevant under Rule 12 (b) (6).

Each of the acts and/or omissions alleged to constitute the breaches of the implied duty of good faith and fair dealing in Count II clearly duplicate those alleged to constitute breaches of the express provisions of the Merger Agreement in Count I.

## A.    The $150,000.00 Payment

The breach of implied good faith alleged in paragraph 109 (a) of Count II ("directing the payment of and paying $150,000.00 into Sellers' new company without disclosure or authorization") is drawn from incorporated paragraph 84, where it is characterized as an "*Improper and Illegal Transfer of Cash for the Restaurant Business.*" (emphasis supplied). Purchasers insist that this is a violation of express provisions of the Merger Agreement, including Articles 4.8 (a), 4.8 (b), 4.27 and 9.2 (b).  See Travisano Decl., Ex. A at pp. 3, 4 and 5; see also Counterclaims, ¶ 100.

## B.    Reduced Advertising

Likewise, the breach alleged in paragraph 109 (b) ("[r]educing the advertising rate in the fourth quarter 2006 to retain cash with the effect that business in that quarter and in 2007 was seriously affected") is drawn from incorporated paragraph 79, there characterized as "*Significant Reductions in Expenditures for Media Advertising.*"  (emphasis supplied). Purchasers again insist that this is a violation of Articles 4.8 (a), 4.21, 4.8 (b), 4.27 and 9.2 (b) of

the Merger Agreement.  See Travisano Decl., Ex. A at pp. 3, 4 and 5; see also Counterclaims, ¶ 100.

### C.    Overdue Payables

Following the same pattern, the breach of implied good faith alleged in paragraph 109 (c) of Count II ("[d]elaying payables due in the fourth quarter 2006, leaving Hestia to pay an avalanche of overdue payables that the Company had not assumed and deal with angry vendors") is drawn from incorporated paragraphs 86-90 of the Counterclaims, identified by Purchasers as a "*Failure to Disclose, Recognize and Record Overdue and Unpaid Payables*."  (emphasis supplied).  Purchasers again insist that this is a violation of the express provisions of Articles 1 (definition of "Assumed Liabilities"), 2.6 (a) and (b), 4.8 (a), 4.8 (b), 4.27, 6.2 and 9.2 (b) of the Merger Agreement.  See Travisano Decl., Ex. A at pp. 3, 4 and 5; see also Counterclaims, ¶ 100.

### D.    Payment of Sellers' Personal Expenses

Subparagraph (d) of paragraph 109 in Count II continues in the same vein.  The breach of implied good faith alleged in paragraph 109 (d) ("[p]aying Sellers' personal expenses from the Company's funds without disclosure or authorization") is drawn from incorporated paragraphs 85 and 91-92, where they are identified as "*Failure to Disclose, Recognize and Record Liabilities*" and *"Improper and Unauthorized Payments to Orza*."  (emphasis supplied).  Purchasers insist that these are violations of express provisions of the Merger Agreement, including Articles 1 (definition of "Assumed Liabilities"), 2.6 (a) and (b), 4.8 (a), 4.8 (b), 4.27, 6.2 and 9.2 (b).  See Travisano Decl., Ex. A at pp. 3, 4 and 5; see also Counterclaims, ¶ 100.

### E.    The Laundry List of Alleged Bad Acts

In their final specification of breach of the implied duty of good faith in paragraph 109 (e), Purchasers throw in the proverbial kitchen sink.  Purchasers accuse the Counterclaim Defendants of "[m]anipulation of financials as set forth in Paragraphs 71 through 93 above."  In

the twice-incorporated paragraphs 71-93, and in addition to those paragraphs discussed above,

Purchasers characterize the misconduct as:

- "A. Improper Treatment of Smallwares Expenses" (¶¶ 71-72);

- "B. Improper Treatment of Consultant Fees" (¶ 73);

- "C.  Improper Treatment of Gift Card Liability"(¶¶ 74-75);

- "D.  Improper Treatment of Vendor Rebates"(¶ 76);

- "E. Improper Recognition of Rent Expense Reversal" (¶ 77);

- "F. Understatement of Property Tax Liability"(¶ 78);

- "H. Improper Adjustment of Prepaid Assets" (¶ 80);

- "I. Improper Recognition of Contingent Gains"(¶ 81);

- "J. Failure to Disclose, Recognize and Record Contract Termination Fees" (¶¶ 82-83);

- "N. Improper and Unauthorized Payments to Orza" (¶¶ 91-92); and

- "O. Improper Adjustment of Pre-Opening Expenses"(¶¶ 93-94).

Purchasers insist that all such misconduct are violations of various express

provisions of the Merger Agreement, including Articles 1 (definition of "Assumed Liabilities"),

2.6 (a) and (b), 4.8 (a), 4.8 (b), 4.27, and 9.2 (b).  See Travisano Decl., Ex. A at pp. 3, 4 and 5;

see also Counterclaims, ¶ 100.  Additionally, the allegations of paragraphs 73-93, here and in

connection with each of the preceding subparagraphs of paragraph 109, are subject to

Purchasers' declaration in paragraph 70 that each of the alleged improprieties and fraudulent activities "contradicted representations Sellers had made in connection with the Sale [.]"

The acts upon which Purchasers base their counterclaim for breach of the implied covenant are thus the very same acts which they allege are in express violation of the Merger Agreement, and upon which they base their claim in Count I for breach of that agreement. In order to plead a breach of the implied covenant of good faith and fair dealing, a plaintiff must identify a specific implied contractual obligation and allege both a breach of that obligation and resulting damage. See Moore Business Forms, Inc. v. Cordant Holdings Corporation, 1995 WL 662685, at *8 (Del. Ch. Nov. 2, 1995). Under Delaware law, "[i]t is well established that a party `cannot assert a claim for breach of [an] implied covenant [of good faith and fair dealing] that is based on exactly the same acts which are said to be in breach of express covenants.´" Izquierdo v. Sills, 2004 WL 2290811, at *13 (Del. Ch. June 29, 2004) (citing Metro Communication Corp. v. Advanced Mobilecomm Techs. Inc., 854 A.2d 121,142 n. 32 (Del. Ch. 2004) quoting USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 438-439 (3d Cir. 1993)); see also Cerberus Int'l Ltd. v. BancTec, Inc., 16 A.D.3d 126, 127, 791 N.Y.S.2d 28, 30 (1st Dep't 2005)

Purchasers' Count II, by basing a claim for breach of the implied covenant of good faith and fair dealing upon alleged express violations of the Merger Agreement, fails to state a claim upon which relief may be granted.[2]

---

[2]  The implied covenant of good faith and fair dealing claim is defective for a second reason. Virtually all of the conduct identified in Count II occurred before the closing -- i.e., before the Merger Agreement was executed. The timing of the alleged conduct is crucial. As one leading commentator on contract law has observed: "Since a court supplies a term to govern a case that the parties have omitted from their agreement, the implied duty of good faith does not arise… unless an agreement is already in existence." E.A. Farnsworth, Contracts § 7.17 at 505 (1999).

## POINT III.

### THE PRIMA FACIE TORT CLAIM
### <u>FAILS AS A MATTER OF LAW</u>

In Count III, Counterclaimants assert a prima facie tort claim against all of the Sellers.  There, the Sellers are alleged to have "intentionally inflicted harm on [the] Counterclaimants through various instances and types of financial malfeasance and fraud. . . ." <u>See</u> Counterclaims, ¶ 112.  The Sellers engaged in this course of conduct, Counterclaimants contend, "solely to increase [their] proceeds from the Sale at the expense of the Company."  <u>Id.</u>, ¶ 113.

Under Delaware law, the elements of a prima facie tort claim are:  (1) the intentional infliction of harm, (2) resulting in damage, (3) without excuse or justification, (4) by conduct that otherwise would be lawful, and (5) not falling within the ambit of other more traditional tort claims.  <u>See</u> <u>Lord v. Souder</u>, 748 A.2d 393, 402-03 (Del. 2000); <u>Nix v. Sawyer</u>, 466 A.2d 407, 412 (Del. Super. 1983); <u>Kaye v. Pantone, Inc.</u>, 395 A.2d 369, 373 (Del. Ch. 1978).  As a general rule, prima facie tort is a "highly disfavored cause of action."  <u>Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.</u>, 83 F. Supp. 2d 384, 392 (S.D.N.Y. 2000) (applying New York law).  As one leading commentator on this tort has observed:

> A "misty shroud" is how some courts, with considerable justification, have described the doctrine of prima face tort . . . .  [It] is characterized by all of the obscurity and confusion that the metaphor of a misty shroud suggests.

Kenneth J. Vandevelde, <u>The Modern Prima Facie Tort Doctrine</u>, 79 Ky. L. J. 519, 519 (1991). The nebulous nature of the tort has caused the courts to approach prima facie claims warily.  The courts have been vigilant in preventing prima facie tort from "becom[ing] a `catch-all´

alternative for every cause of action which cannot stand on its legs." <u>Belsky v. Lowenthal</u>, 62

A.D.2d 319, 323, 405 N.Y.S.2d 62, 65 (lst Dep't 1978) (applying New York law).

Prima facie tort claims are consistently dismissed and the one asserted here is

deserving of precisely that fate. It fails under Delaware law because, as alleged, the conduct

giving rise to the claim is neither otherwise lawful nor does it fall outside the ambit of traditional

tort claims. To the contrary, the gist of Counterclaimants' theory is that the Sellers engaged in

patently <u>unlawful</u> conduct. Moreover, this same conduct not only falls within the ambit of other

more traditional tort claims but it <u>is</u>, in fact, the basis for the fraud claim Counterclaimants <u>have</u>

asserted in their pleading.

### A.    The Underlying Conduct Is Not Alleged to Be Lawful

Counterclaimants have not satisfied and cannot satisfy the requirement that a

prima facie tort claim arise out of otherwise lawful conduct. <u>See</u> <u>Lord</u>, 748 A.2d at 402-03

(damage must be caused "by an act or series of acts which would otherwise be lawful"). To the

contrary, Sellers are alleged to have engaged in "numerous improprieties and fraudulent

activities," all with an eye toward "artificially increasing Sellers' proceeds from the Sale at

Hestia's expense." <u>See</u> Counterclaims, ¶ 70.

Counterclaimants maintain that the conduct giving rise to the prima facie tort

claim is set forth in paragraphs 71 through 93 of their pleading. <u>Id.</u>, ¶ 112. There,

Counterclaimants outline a litany of alleged acts that cannot credibly be categorized as being

otherwise lawful. For example, Sellers are alleged to have engaged in improper accounting

practices with respect to smallware expenses. <u>Id.</u>, ¶¶ 71-72. They also allegedly "improperly

capitalized" certain consulting fees in violation of GAAP. <u>Id.</u>, ¶ 73. Further, the Sellers are

alleged to have devised a gift card program that "violate[d] state law in numerous respects" and

then "grossly and willfully understated the Companies' gift card liability by several hundred thousand dollars." Id., ¶ 75.  In addition, Sellers -- again in violation of GAAP -- allegedly "considerably overstated" vendor rebates and improperly recorded over accrued rent. Id., ¶¶ 76-77.

Elsewhere, the Sellers are alleged to have violated state law by "improperly exclud[ing] smallwares and expendables from their property tax calculation [,]" thereby understating the Companies' tax liability.  Id., ¶ 78.  They are accused of having schemed to "creat[e] a false and unsupported impression of additional cash in the business."  Id., ¶ 80.  They are alleged to have "creat[ed] an illusory impression that the Companies were in possession of additional cash" by recording, again in violation of GAAP, the contingent gain proceeds from a lawsuit that had not been received.  Id., ¶ 81.  Further, the Sellers are alleged to have improperly concealed the existence of contracts containing onerous penalty provisions.  Id., ¶¶ 82-83. Similarly undisclosed, according to the Counterclaims, was a $150,000.00 payment made outside the ordinary course of business and used to fund Sellers' new business.  Id., ¶ 84.  Further, the Counterclaim Defendants are alleged to have orchestrated and concealed certain unauthorized payments used to cover personal expenses.  Id., ¶ 85.  Similarly, they are alleged to have improperly schemed to ensure delay in paying payables to vendors.  Id., ¶¶ 86-88.

In short, the allegations of the prima facie tort claim -- a veritable laundry list of unlawful acts -- are fatal to that claim.  The Counterclaim Defendants respectfully submit that Counterclaimants' failure to tie the prima facie tort claim to legal conduct compels the dismissal of Count III.

**B.    The Underlying Conduct Falls Squarely Within
The Ambit of More Traditional Tort Theories**

Equally fatal to the prima facie tort claim is the fact that the alleged conduct

giving rise to that claim plainly falls within the ambit of more traditional theories of recovery

sounding in tort.  See Lord, 748 A.2d at 402-03 (damage must be caused by acts which "do not

fall within the categories of traditional tort") (citation omitted).  The fact of the matter is that the

wrongful conduct said to give rise to the prima facie tort in Count III is the very same conduct

alleged to have given rise to the fraud claim asserted in Count VIII.

Specifically, in support of the prima facie tort claim, Counterclaimants rely on the

allegations set forth in paragraphs 71 through 93 of their pleading.  See Counterclaims, ¶ 112.  In

setting forth the factual basis for the fraud claim in Count VIII, Counterclaimants rely on the

very same conduct set forth in precisely those same paragraphs.  Id., ¶ 145.

The court in Brett v. Berkowitz, 1995 WL 270146 (Del. Super. Apr. 13, 1995)

addressed an analogous situation.  There, plaintiff alleged that her attorney sexually harassed her

during the course of their attorney-client relationship.  Id. at *1.  The Brett court characterized

the alleged conduct as being sufficiently outrageous to support plaintiff's claim for intentional

infliction of emotional distress.  Id. at *6.  Plaintiff's prima facie tort claim based on the same

wrongful conduct, however, failed.  The court reasoned that plaintiff's "allegations are sufficient

to establish a tort of intentional infliction of emotional distress; therefore, plaintiff does not have

a claim for prima facie tort since a requisite of that tort is that the acts of which a plaintiff

complains are not classified as any other recognized tort."  Id. at *8 n. 5.

For the same reasons articulated in Brett, the prima face tort claim asserted in

Count III fails as a matter of law because the intentional acts at the heart of that claim fall

squarely within parameters of more traditional tort claims.  The Counterclaim Defendants

respectfully submit that this pleading defect is fatal to a prima facie tort claim and provides an independent basis for the dismissal of Count III.

### POINT IV.

### THE FIDUCIARY DUTY CLAIM
### TRACKS THE BREACH OF CONTRACT CLAIM
### AND THUS FAILS AS A MATTER OF LAW

In Count IV, Counterclaimants allege that Counterclaim Defendant J. B. Edwards breached a fiduciary duty "by repeatedly acting disloyally and in bad faith, including but not limited to paying personal expenses without authorization, including country club dues, with Company funds; refusing to accept Deloitte's adjustments and refusing to seek Company approval for those adjustments; destroying Company property prior to his departure; misrepresenting that (sic) Deloitte had approved the preliminary 2006 financial statement provided by Edwards to the Company in March 2007; frustrating the timely completion of the 2006 audit; misrepresenting the reasons for the avalanche of payables being paid out in January 2007; and issuing an unauthorized and improper payment of $42,120.15 to [Counterclaim Defendant Mr.] Orza from Company funds." See Counterclaims, ¶ 118. Once again, this breaching conduct tracks that which is alleged to constitute a breach of the parties' express contract. As discussed below, a breach of fiduciary duty claim fails under such circumstances.

16

The breaches of fiduciary duty thus alleged are identical to the breaches of Mr. Edwards' employment contract alleged in Count VI of Purchasers' Counterclaims.[3]  Indeed, the only alleged breach of fiduciary duty in Count IV not expressly included in Count VI is the allegation that Mr. Edwards breached his duty by "frustrating the timely completion of the 2006 audit [.]"  However, Purchasers aver that the proper completion of that audit was one of the obligations of Mr. Edwards' contract.  See, e.g., Counterclaims, ¶ 53 ("One of Edwards's primary responsibilities in his role as Vice President of Finance for the Company was to coordinate and oversee the audit of the 2006 financials, which was to be completed within 120 days post-closing [.] id., ¶ 54 ("Edwards was the primary contact person for the Company's auditor, Deloitte & Touche LLP (`Deloitte´) during the audit process, and was responsible for preparing and delivering the accurate and complete financial statements and financial information to them and answering their questions in a timely and responsive manner"); id., ¶ 59 ("Moreover, the Company later learned that Deloitte's delay in completing the audit was due in great part to Edwards's conduct, which continually frustrated the progress of the audit").

Clearly, the alleged breach of that duty, cast as a breach of fiduciary duty in Count IV, is one of the alleged breaches of duty subsumed within the breach of the employment contract in Count VI, as established both by the non-exhaustive nature of the listing in paragraph 129 (the breaches of contract alleged in Count VI "includ[e] but [are] not limited to" those

---

[3]   In paragraph 129 of Count VI of the Counterclaims, Purchasers allege that Mr. Edwards "breached the Employment Agreement in numerous respects, including but not limited to the unauthorized and improper payment of his personal expenses, including country club dues, with Company funds without authorization; refusing to accept Deloitte's adjustments and refusing to seek Company approval for those adjustments; destroying Company property by deleting it from the Company server prior to his departure; misrepresenting that Deloitte had approved the preliminary 2006 financial statement provided by Edwards to the Company in March 2007; misrepresenting the reasons for the avalanche of payables being paid out in January 2007; and making an improper and unauthorized payment of $42,120.15 to [Mr.] Orza with Company funds."

expressly stated) and by the express incorporation of paragraphs 53, 54, 59 and 118 into Count

VI by paragraph 125 ("Counterclaimants hereby repeats (sic) and realleges (sic) paragraphs 1

through 124 as if fully set forth herein").

 Accordingly, as a matter of Delaware law, Count IV must be dismissed.  Here, as

in Solow v. Aspect Resources, LLC, 2004 WL 2694916, at *5 (Del. Ch. Oct. 19, 2004) "the

contract and fiduciary claims are pled in almost identical terms, with large portions of the

contract claims merely copied and pasted into the fiduciary claims."  Where the same conduct is

alleged in support of a breach of contract claim and a breach of fiduciary obligation, the latter

must be dismissed as a violation of the primacy of contract law over fiduciary law, and as a

failure to state a cognizable breach of fiduciary duty claim.  See Blue Chip Capital Fund II

Limited Partnership v. Tubergen, 906 A.2d 827, 832-833 (Del. Ch. 2006); Madison Realty

Partners 7, LLC v. AG ISA, LLC, 2001 WL 406268, at *6 (Del. Ch. April 17, 2001); Lessig

Nuclear Associates, P.A. v. Meckelnburg, 2003 WL 2549140, at p. 12 (Pa. Com. Pl. Feb. 21,

2003)(Trial Order); Gale v. Bershad, 1998 WL 118022, at *5 (Del. Ch. March 4, 1998).

 The court's reasoning in BAE Systems North America Inc. v. Lockheed Martin

Corporation, 2004 WL 1739522 (Del. Ch. Aug. 3, 2004), is instructive:

> Lockheed's breach of fiduciary duty counterclaim,
> however, will be dismissed.  That counterclaim is based on
> the same operative facts as its breach of contract
> counterclaim.  As this Court has previously held, claims
> sounding in fiduciary duty that cannot be brought
> independently of claims based on breach of contract will
> not survive a motion to dismiss. *** The language of the
> pleadings shows that the actions underlying Lockheed's
> breach of contract counterclaim are the same as the actions
> underlying Lockheed's breach of fiduciary duty
> counterclaim.  Therefore, the Court will address the actions
> under `contract principles,´ and Lockheed's Counterclaim
> Count IV is dismissed.

Id. at *7.  This analysis is echoed in Lessig Nuclear Associations, P.A. v. Meckenburg, 2003 WL 2549140 (Pa. Com. Pl. Feb. 21, 2003) (applying Delaware law):

> According to Delaware law, however, Plaintiffs cannot advance a claim based upon the contract between the parties while simultaneously stating a cause of action for a breach of fiduciary duty that arises out of the same conduct as alleged in the breach count.  In Gale v. Bershad, No. 15714, 1998 WL 118022 (Del. Ch. March 4, 1998), the Court held that if the duty sought to be enforced arises out of the parties' contractual relationship, as opposed to their fiduciary relationship, then that would preclude any fiduciary claim based upon the same alleged conduct.  The Bershad Court held that "[t]o allow a fiduciary claim to coexist in parallel with [a contractual] claim, would undermine the primacy of contract law over fiduciary law in matters involving ... contractual rights and obligations."  Id. at *5.

> This principle of law was reaffirmed in Madison Realty Partners 7, LLC v. AG ISA, LLC, No. 18094, 2001 WL 406268 (Del. Ch. April 17, 2001). In Madison Realty, the Court held that where a breach of contract claim and a breach of fiduciary duty claim are based upon the same underlying conduct, the claims overlap and the fiduciary claims must be dismissed. In other words, since the contract claim addresses the alleged wrongdoing by the defendants, any fiduciary claim would be "superfluous." Bershad, 1998 WL 118022 at *5. Accordingly, since the underlying conduct alleged in Plaintiffs' breach of contract claim is the same as the conduct alleged in the breach of fiduciary duty claim, Delaware law mandates that the fiduciary claim be dismissed.

Id. at p. 12.

The duties sought to be enforced in Count IV "have a clearly contractual source."

Moore Business Forms, Inc. v. Cordant Holdings Corporation, 1995 WL 662685, at *6.  As a

consequence, the rights Purchasers seek to vindicate "are contractual, not fiduciary, in nature," and no cognizable breach of fiduciary duty has been stated.  Id.

For the reasons set forth above, Counterclaim Defendants respectfully submit that Count IV should be dismissed.

### POINT V.

### ABSENT A BREACH OF FIDUCIARY DUTY, THE AIDING AND ABETTING CLAIM FAILS AS A MATTER OF LAW AND COMMON SENSE

Count V of Purchasers' Counterclaims insists that Counterclaim Defendants Mr. and Mrs. Orza are liable for aiding and abetting the breach of fiduciary obligation alleged in Count IV of the Counterclaims.  See Count V, Counterclaims, ¶ 122 ("[Mr.] Edwards had a fiduciary obligation to the Company, which he breached as set forth above in Paragraphs 115 through 120").  However, under Delaware law, "[i]n order to establish aiding and abetting liability, the plaintiffs must allege: (1) a fiduciary relationship; (2) the fiduciary breached its duty; (3) knowing participation in a breach; and (4) damages."  Forsythe v. ESC Fund Management Co. (U.S.), Inc., 2007 WL 2982247, at *13 (Del. Ch. Oct. 9, 2007).  Despite conceptual differences, `aiding and abetting´ is like `civil conspiracy´ in that "liability is predicated on independent tortious action."  Anderson v. Airco, Inc., 2004 WL 2827887, at *4 (Del. Super. Ct. Nov. 30, 2004).  Since Count IV must be dismissed for failure to allege a breach of duty by a fiduciary, so must the claim in Count V that Mr. and Mrs. Orza aided and abetted the nonexistent breach of fiduciary duty.  See Madison Realty Partners 7, LLC v. AG ISA, LLC, 2001 WL 406268, at *6 n.19 (Del. Ch. Apr. 17, 2001); see also Ramunno v. Cawley, 705 A.2d 1029, 1039 (Del. 1998) (upholding dismissal of civil conspiracy claims on the rationale that complaint failed to state a claim to the underlying tort).

## CONCLUSION

For the reasons set forth above, the Counterclaim Defendants respectfully request that the Court enter an Order dismissing Count II (Breach of Good Faith), Count III (Prima Facie Tort), Count IV (Breach of Fiduciary Duty) and Count V (Aiding and Abetting Breach of Fiduciary Duty) of the Counterclaims.

Dated: January 21, 2008
       New York, New York

Respectfully submitted,

ENTWISTLE & CAPPUCCI LLP

By:    __/s/ William S. Gyves_____
       William S. Gyves
       Robert M. Travisano
       280 Park Avenue, 26th Floor West
       New York, New York 10017
       Telephone:  (212) 894-7200
       Facsimile:  (212) 894-7272
       wgyves@entwistle-law.com
       rtravisano@entwistle-law.com

       Michael R. Perri
       Robert J. Campbell
       Wendy P. Higgins
       PHILLIPS MCFALL MCCAFFREY
       MCVAY & MURRAH, P. C.
       Corporate Tower, 13th Floor
       101 N. Robinson
       Oklahoma City, Oklahoma 73102
       Telephone:  (405)235-4100
       Facsimile:  (405)235-4133
       mrperri@phillipsmcfall.com
       rjcampbell@phillipsmcfall.com
       wphiggins@phillipsmcfall.com

       (Pro Hac Vice Applications Pending)

       Attorneys for Plaintiffs and
       Counterclaim Defendants