**EXHIBIT A**

November 7, 2007

**VIA FEDEX**

Bradley L. Grow
2020 Mistletoe Lane
Edmond, OK 73034

James M. Burke
408 Country Club Terrace
Edmond, OK 73003

### *Notice of Claim*

Dear Sirs:

      Pursuant to Sections 10.1(e) and 10.6 of that certain Agreement and Plan of
Reorganization and Merger by and between Eateries Holdings, LLC, Eateries, Inc., Fiesta LLC,
the members of Eateries Holdings, LLC ("Holdings") (collectively "Sellers"), Hestia Holdings,
LLC ("Purchaser"), Eateries Merger Sub, Inc. and Fiesta Merger Sub, Inc. dated as of December
26, 2006 (the "Merger Agreement") by which Purchaser, through the merger and other
"Contemplated Transactions" described therein acquired the subsidiaries of Holdings (the
"Transaction"), Purchaser hereby provides Sellers' Representatives (on behalf of all the Sellers),
as Indemnifying Parties, with its Notice of Claim (the "Notice") advising Sellers'
Representatives on behalf of all the Sellers that, as set forth below, Purchaser has claims against
Sellers, including, but not limited to, claims that Sellers breached representations, warranties,
covenants and other provisions of the Merger Agreement, and engaged in fraud,
misrepresentations and other misconduct in connection with the restaurant business of Holdings
and its subsidiaries (the "Business").

      Purchaser hereby notifies Sellers that Purchaser is entitled to indemnification by Sellers
pursuant to Article X of the Merger Agreement. Moreover, Purchaser also hereby notifies
Sellers that it is entitled to: return of the Net Working Capital adjustment it paid while Sellers'
wrongdoing was concealed; extinguish and cancel any duty arising under the Merger Agreement
to issue Earnout Notes (including as set forth in Section 2.7); a full set-off of any amounts due
under all the Sellers' Notes (including as set forth Section 2.7); and payment of additional
damages of at least several million dollars. Purchaser expressly reserves all rights and remedies,
including, but not limited to, the right to seek rescission including return of the purchase price
and all amounts used to repay indebtedness and Sellers' expenses at closing, together with any
other transaction fees and all related interest.

Messrs. Grow and Burke
November 7, 2007
Page 2

This Notice does not purport to set forth all causes of action that Purchaser may have against Sellers in connection with the Transaction, and shall not serve to limit or constrain Purchaser's rights to pursue all legal claims and remedies available to Purchaser. Further, this Notice is based on information available to Purchaser at this time; because Purchaser's investigation of this matter is continuing, Purchaser expressly reserves the right further to amend or supplement this Notice as appropriate.

### Illustrative Breaches of Representations and Warranties

Sellers' numerous breaches of the Merger Agreement include but are not limited to: improper treatment of smallwares expenses; improper treatment of consultant fees; improper treatment of gift card liability; improper recognition of vendor rebates; improper recognition of rent expense reversal; understatement of property tax liability; significant reductions in expenditures for media advertising; improper adjustment of prepaid assets; improper recognition of contingent gains; failure to disclose, recognize and record contract termination fees; failure to disclose, recognize and record contract terms; improper and illegal transfer of cash from the Business; failure to disclose, recognize and record liabilities, including Sellers' personal expenses; failure to disclose, recognize and record overdue and unpaid payables; and improper adjustment of pre-opening expenses.

Each of these breaches alone is a violation of Sellers' obligations under the Merger Agreement; considered together, it is clear that, especially given Sellers' efforts to hide their wrongdoing through destruction of documents and conversion of company property, these breaches are indicative of a fraudulent scheme by Sellers and their accomplices to, *inter alia*, inflate the EBITDA Amount (as defined in Section 2.7) and to increase the amount of the Net Working Capital (pursuant to Section 2.6) in order to receive additional payouts to which they were not entitled under these, and other, provisions of the Merger Agreement, and deprive Purchaser of the full value of the transaction.

Purchaser provides the following non-limiting examples of representations, warranties and covenants and /or other provisions of the Merger Agreement which Purchaser has reason to believe have been breached by Sellers.

- Page 3          Assumed Liabilities

Sellers agreed that Purchaser would assume responsibility for "any accounts payable incurred in the Ordinary Course of Business (excluding any accounts payable that are aged for more than 45 days), [and] (b) current accrued expenses incurred in the ordinary course of Business (excluding any accrued expenses that are aged for more than 45 days) . . . ."

Sellers have breached this representation by engaging in numerous improper practices, including but not limited to: failure to disclose, recognize and record liabilities, including Sellers' personal expenses; and failure to disclose, recognize, and record overdue and unpaid payables.

Messrs. Grow and Burke
November 7, 2007
Page 3

- Article 2.6(a), (b)  <u>Net Working Capital Adjustment</u>

Sellers warranted to Purchaser that "[t]he Estimated Closing Balance Sheet and Estimated Net Working Capital Statement will be prepared in accordance with GAAP consistently applied with past practices used in the preparation of the Financial Statements."

Sellers further warranted to Purchaser that "Net Working Capital means (a) the consolidated current assets of the Acquired Companies . . . as of the True-Up Effective Time as determined in accordance with GAAP <u>minus</u> (b) the consolidated current liabilities of the Acquired Companies . . . as of the True-Up Effective Time.  Net Working Capital shall be determined in accordance with GAAP consistently applied with the practices used in the preparation of the Financial Statements . . . ."

Sellers have breached this warranty by engaging in numerous improper and unlawful practices designed to, among other things, increase the amount of Net Working Capital and thus to increase the payout to Sellers under the Merger Agreement.  These practices include but are not limited to: understatement of property tax liability; improper adjustment of prepaid assets; failure to disclose, recognize and record liabilities, including Sellers' personal expenses; improper recognition of contingent gains; failure to disclose, recognize and record overdue and unpaid payables; and improper adjustment of pre-opening expenses.

- Article 4.8 (a)  <u>Financial Condition, Financial Statements</u>

Sellers warranted to Purchaser that "the Financial Statements: (i) are consistent with the books and records of Holdings and its Subsidiaries; (ii) fairly present the consolidated financial position, on a Pro Forma or actual basis, as applicable, of Holdings and its Subsidiaries as of the dates thereof, and the consolidated results of their operations for the period indicated therein; and (iii) have been prepared in accordance with GAAP applied on a consistent basis throughout the periods involved."

Sellers have breached this warranty by engaging in numerous improper and unlawful practices, including but not limited to: improper treatment of smallwares expenses; improper treatment of consultant fees; improper treatment of gift card liability; improper recognition of vendor rebates; improper recognition of rent expense reversal; understatement of property tax liability; improper adjustment of prepaid assets; significant reductions in expenditures for media advertising; failure to disclose, recognize and record contract termination fees; failure to disclose, recognize and record contract terms; improper and illegal transfer of cash from the Business; failure to disclose, recognize and record liabilities, including Sellers' personal expenses; improper recognition of contingent gains; failure to disclose, recognize and record overdue and unpaid payables; and improper adjustment of pre-opening expenses.

Messrs. Grow and Burke
November 7, 2007
Page 4

- Article 4.8 (b)    Financial Condition, Financial Statements

Sellers warranted to Purchaser that "[n]either Holdings nor any subsidiary has any liabilities, claims or obligations of any nature, whether known or unknown, accrued, absolute, contingent, anticipated or otherwise, whether due or to become due, whether asserted or unasserted, whether liquidated or unliquidated, and whether or not required under GAAP to be accrued on the financials statements of Holdings or any of its subsidiaries . . . that are not reflected or reserved against in the Most Recent Balance Sheet, other than those accrued after the date of the Most Recent Balance Sheet in the Ordinary Course of Business."

Sellers have breached this warranty by engaging in numerous improper and unlawful practices, including but not limited to: understatement of property tax liability; improper treatment of gift card liability; failure to disclose and to recognize contract termination fees; failure to disclose, recognize and record contract terms; improper and illegal transfer of cash from the Business; failure to disclose, recognize and record liabilities, including Sellers' personal expenses; and failure to disclose and recognize overdue and unpaid payables.

- Article 4.21    Absence of Certain Changes and Events

Sellers warranted that "[s]ince December 25, 2005, (A) no event, change or circumstance has occurred that has had, or is reasonably likely to have, individually or in the aggregate, a Material Adverse Effect", defined as "any effect which has had or could reasonably be expected to result in (i) a material adverse effect on or change in the Business, assets, condition (financial or otherwise), performance or results of operations of the Acquired Companies."

Sellers have breached this warranty by engaging in numerous improper practices, including but not limited to: significant reductions in expenditures for media advertising.

- Article 4.27    Disclosure; Information Supplied

Sellers warranted to Purchaser that "[n]o representation or warranty contained in this Agreement, and no statement contained in any document, certificate or schedule furnished to or to be furnished to the Purchaser or any of its representatives pursuant to this Agreement, contains or will contain any untrue statement of a material fact, or omits or will omit to state any material fact required to be stated therein or necessary in order to make the statements herein or therein, under the circumstances under which it was or will be made, not misleading. The financial information delivered to Purchaser on behalf of Sellers or Holdings has been prepared in good faith based on the books and records of Holdings and the Subsidiaries, and is true, accurate and complete as of the time and for the periods indicated thereon."

Sellers have breached this warranty by engaging in numerous improper and unlawful practices, including but not limited to: improper treatment of smallwares expenses; improper treatment of consultant fees; improper treatment of gift card liability; improper recognition of vendor rebates; improper recognition of rent expense reversal; understatement of property tax liability; improper adjustment of prepaid assets; significant reductions in expenditures for media advertising; failure to disclose, recognize and record contract termination fees; failure to

Messrs. Grow and Burke
November 7, 2007
Page 5

disclose, recognize and record contract terms; improper and illegal transfer of cash from the
Business; failure to disclose, recognize and record liabilities, including Sellers' personal
expenses; failure to disclose, recognize and record overdue and unpaid payables; and improper
adjustment of pre-opening expenses.

- Article 6.2        Conduct of the Business

   Sellers represented that they would operate the Business in the "Ordinary Course of
Business and shall use their commercially reasonable efforts to keep the Business and Assets
intact".

   Sellers have breached this warranty by engaging in numerous improper practices,
including but not limited to: significant reductions in expenditures for media advertising; failure
to disclose, recognize and record liabilities, including Sellers' personal expenses; and failure to
disclose and recognize overdue and unpaid payables.

- Article 9.2(b)      Conditions to the Obligations of Purchaser Entities.

   Sellers represented that "the representations and warranties of Holdings, Eateries, Fiesta
and the Sellers contained in this Agreement shall be true and correct as of the date hereof and at
and as of the Closing Date as though made at and as of the Closing Date."

   Sellers have breached this warranty by engaging in numerous improper and unlawful
practices, including but not limited to: improper treatment of smallwares expenses; improper
treatment of consultant fees; improper treatment of gift card liability; improper recognition of
vendor rebates; improper recognition of rent expense reversal; understating property tax liability;
failure to disclose and to recognize contract termination fees; failure to disclose, recognize and
record contract terms; improper and illegal transfer of cash from the business; failure to disclose,
recognize and record liabilities, including Sellers' personal expenses; failure to disclose and
recognize overdue and unpaid payables; and improper adjustment of pre-opening expenses.

### Indemnification

   Article 10.2 of the Merger Agreement, entitled Indemnification by Holdings, Eateries,
Fiesta and the Sellers, provides, in pertinent part, that Sellers will "indemnify, reimburse, defend,
and hold harmless the Purchaser and each Acquired Company and each of their successors and
assigns in interest . . . from and against, and will pay to the Purchaser Indemnitees the amount of,
any Losses, incurred by any of them based upon, arising out of or otherwise, directly or
indirectly, related to, resulting from or in respect of:

   (i)      Any inaccuracy in or breach of any representation or warranty of Holdings,
            Eateries, Fiesta or Sellers contained in Article III or Article IV, the Schedules
            hereto, or any other representation or warranty of Holdings, Eateries, Fiesta or the
            Sellers contained in any Other Sellers Documents, Other Holdings Document, or
            any certificate delivered by or on behalf of the Sellers or Holdings or any
            Subsidiary pursuant to this Agreement with respect to such representation or

Messrs. Grow and Burke
November 7, 2007
Page 6

warranties, in each case as such representation or warranty would read if all qualifications as to materiality . . . were deleted therefrom.

(ii)    any fraud or intentional misrepresentation by Holdings, any Subsidiary or any Seller or any breach by Holdings, Eateries, Fiesta or any Seller or any covenant or obligation of Holdings, Eateries, Fiesta or any Seller contained in this Agreement or any Other Holdings Document or Other Seller Document; . . .

(vii)    any Retained Liability as of the Closing Date or arising out of or relating to or in connection with any events or circumstances existing, occurring or arising prior to the Closing . . . . "

Pursuant to Article X, Purchaser is entitled to indemnification from Sellers in the full amount of Purchaser's damages for any and all losses arising out of Sellers' breaches, their fraudulent and intentional misrepresentations and other wrongdoing.

**Set-off**

Pursuant to Section 10.4 of the Merger Agreement, "[t]he Seller Note Issuers shall have the right to set-off against any outstanding indebtedness under the Seller Notes any amounts payable to any Purchaser Indemnitee under Section 8.1 and 10.2 (in which case the indebtedness under the applicable Seller Notes shall be reduced by the amount of such set-off)."

Relatedly, Section 2.7 (EBITDA Amount) states that "[t]he EBITDA Amount shall be subject to adjustment in accordance with Articles VIII and X . . . ."

Thus, any amounts due to Sellers in the form of any Sellers' Notes due under the Merger Agreement, including those due under Sections 2.2(g)(iii), 2.3(g)(i)(c), and 2.7, are completely and fully set off.

Messrs. Grow and Burke
November 7, 2007
Page 7

## Remedies

In addition, though Purchaser is under no obligation to provide notice of its specific causes of action, Purchaser believes that the Sellers' conduct, as set forth above, also constitutes fraud and intentional misrepresentation and other wrongdoing by Sellers and thus is not subject to any provision regarding notice or set-off, or any limitation on damages.

Nothing in this Notice shall be deemed or construed to waive or prejudice any right, power or remedy which the Purchaser may now have or have in the future under or in connection with the Merger Agreement, the Earnout Notes, or any other Transaction document, including any claims not included in this Notice, any claims not based on Transaction documents, and/or any right to recover legal costs, fees and other expenses associated with pursuing such claims.

Sincerely,

HESTIA HOLDINGS, LLC

By: _____
        Carl C. Cordova
        Chairman

cc:    Keith McFall, Esq.
        Thomas E. L. Dewey, Esq.
        Keara A. Bergin, Esq.