Thomas E.L. Dewey (TD-6243)
Keara A. Bergin (KB-0831)
DEWEY PEGNO & KRAMARSKY LLP
220 East 42nd Street
New York, New York 10017
 (212) 943-9000
*Attorneys for Defendants and Counterclaimants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES BURKE and BRADLEY L. GROW, as the designated Sellers' Representatives, etc., <br><br> Plaintiffs, <br><br> -against- <br><br> HESTIA HOLDINGS, LLC, EATERIES, INC. and FIESTA HOLDINGS, INC., <br><br> Defendants. | Civ. No. 07-9909 (HB) <br><br> **MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OF COUNTERCLAIMS** |
| HESTIA HOLDINGS, LLC, EATERIES, INC. and FIESTA HOLDINGS, INC., <br><br> Counterclaimants, <br><br> -against- <br><br> JAMES BURKE and BRADLEY L. GROW, as the designated Sellers' Representatives, EATERIES HOLDINGS, LLC, THE BURKE FAMILY, LLC, BRADLEY L. GROW, THE GROW FAMILY LLC, THE BRADLEY L. GROW REVOCABLE TRUST, VINCENT F. ORZA, PATRICIA L. ORZA, PATRICIA LANDI ORZA TRUST, ALEXANDRA MARIA ORZA TRUST, PATRICIA L. ORZA TRUST, VINCENT F. ORZA JR. TRUST, PRESTON STOCKTON, J.B. EDWARDS, DOUG DAVIS, PHILLIPS, MCFALL, MCCAFFREY, MCVAY & MURRAH 401K PROFIT SHARING PLAN, D. KEITH MCFALL, and BILL TOTTY, <br><br> Counterclaim Defendants. | |

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ..................................................................... ii

Preliminary Statement.................................................................................1

Factual Background .....................................................................................2

    A.    The Merger Agreement and Sale .................................................2

    B.    Counterclaim Defendant Edwards's Employment.....................3

    C.    Representative Types and Instances of Sellers' Wrongdoing.....5

    D.    Procedural History .....................................................................6

Argument .....................................................................................................7

I.    THE FEDERAL RULES OF CIVIL PROCEDURE EXPRESSLY
AUTHORIZE PLEADING IN THE ALTERNATIVE .......................7

II.    SELLERS' MOTION TO DISMISS THE BREACH OF FIDUCIARY DUTY
CLAIM AGAINST EDWARDS SHOULD BE DENIED .....................8

III.    SELLERS' MOTION TO DISMISS THE CLAIM FOR BREACH OF THE
COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE
DENIED.................................................................................................12

IV.    SELLERS' MOTION TO DISMISS THE PRIMA FACIE TORT CLAIM
SHOULD BE DENIED .......................................................................15

Conclusion .................................................................................................17

## **TABLE OF AUTHORITIES**

*Cases*                                                                                     *Page(s)*

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,*
    -- F. Supp. 2d --, No. 07 Civ. 2373 (DC),
    2008 WL 219765 (S.D.N.Y. Jan. 24, 2008) ....................................................................8

*BAE Sys. N. Amer. Inc. v. Lockheed Martin Corp.,*
    No. Civ. A. 20456, 2004 WL 1739522 (Del. Ch. Aug. 3, 2004)......................................11

*Barbieri v. Swing-N-Slide Corp.,*
    C.A. No. 14239, 1997 WL 55956 (Del. Ch. Jan. 29, 1997) ..............................................9

*Blanchard v. Katz,*
    117 F.R.D. 527 (S.D.N.Y. 1987) ......................................................................................6

*Blue Chip Capital Fund II Ltd. P'ship v. Tubergen,*
    906 A.2d 827 (Del. Ch. 2006).........................................................................................11

*Bonadio v. E. Park Research, Inc.,* 220 F.R.D. 187 (N.D.N.Y. 2003) .........................................6

*Brett v. Berkowitz,*
    Civ. A. No. 91C-12-251, 1995 WL 270146 (Del. Super. Ct. Apr. 13, 1995)...................16

*Cantor Fitzgerald, L.P. v. Cantor,*
    724 A.2d 571 (Del. Ch. 1998)...........................................................................................9

*Cerberus Int'l, Ltd. v. BancTec, Inc.,*
    791 N.Y.S.2d 28, 16 A.D.3d 126 (1st Dep't 2005) ........................................................14

*Elementis Chemicals, Inc. v. T H Agriculture and Nutrition, L.L.C.,*
    373 F. Supp. 2d 257 (S.D.N.Y. 2005)............................................................................7-8

*Fox v. Rodel, Inc.,*
    No. C.A. 98-531-SLR, 1999 WL 803885 (D. Del. Sept. 13, 1999) ..................................8

*Gale v. Bershad,*
    No. Civ. A. 15714, 1998 WL 118022 (Del. Ch. Mar. 4, 1998).......................................11

*Hughes v. Patrolmen's Benevolent Ass'n of the City of New York, Inc.,*
    850 F.2d 876 (2d Cir. 1988)............................................................................................15

*In re Integrated Health Svcs.,*
    344 B.R. 262 (Bankr. D. Del. 2006) .................................................................................8

*Cases*                                                                 *Page(s)*

*Izquierdo v. Sills,*
　　No. 15505-NC, 2004 WL 2290811 (Del. Ch. June 29, 2004) ...........................................15

*Lessig Nuclear Assocs., P.A. v. Mecklenburg,*
　　No. 00-04246 (Pa. Ct. Com. Pl. Feb. 24, 2003)............................................................9, 12

*Linda Scott v. United States,*
　　354 F.2d 292 (Ct. Cl. 1965) ...................................................................................13

*M-101 LLC v. iN Demand LLC,*
　　No. 06 Civ. 12938 (DLC), 2007 WL 4258191 (S.D.N.Y. Dec. 3, 2007) ..........................12

*Madison Realty Partners 7, LLC v. Ag ISA, LLC,*
　　No. Civ. A. 18094, 2001 WL 406268 (Del. Ch. Apr. 17, 2001) ......................................10

*Maillet v. Frontpoint Partners, L.L.C.,*
　　02 Civ. 7865 (GBD), 2003 WL 21355218 (S.D.N.Y. June 10, 2003)..............................13

*MCI Worldcom Commc'ns v. LD Wholesale, Inc.,*
　　No. 01 Civ. 6310 (RO), 2002 WL 1483886 (S.D.N.Y. July 9, 2002) ................................7

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.,*
　　415 F. Supp. 2d 261 (S.D.N.Y. 2005).................................................................9, 10, 11, 14

*Moore Bus. Forms, Inc. v. Cordant Holdings Corp.,*
　　Civ. A. 13911, 1995 WL 662685 (Del. Ch. Nov. 2, 1995)...............................................16

*Nix v. Sawyer,*
　　466 A.2d 407 (Del. Super. Ct. 1983) .............................................................................8

*Patane v. Clark,*
　　508 F.3d 106 (2d Cir. 2007)..........................................................................................9

*RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.,*
　　No. 16873, 1999 WL 550350 (Del. Ch. July 16, 1999)....................................................6

*Solow v. Aspect Res., LLC,*
　　No. Civ. A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004)....................................11

*Stallings v. U.S. Electronics Inc.,*
　　707 N.Y.S.2d 9, 270 A.D.2d 188 (1st Dep't 2000) .........................................................15

*Swierkiewicz v. Sorema N.A.*
　　534 U.S. 506 (2002)........................................................................................................7

| *Cases* | *Page(s)* |
|---|---|

*United States Gypsum Co. v. Nat'l Gypsum Co.,*
  352 U.S. 457 (1957)..................................................................................7

*Universal Studios, Inc. v. Viacom, Inc.,*
  705 A.2d 579 (Del. Ch. 1997)..............................................................9-10

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,*
  341 F. Supp. 2d 258 (S.D.N.Y. 2004)......................................................13


## *Statutes & Other Authorities*

5 Wright & Miller, Federal Practice & Procedure: Civil § 1215......................7

Fed. R. Civ. P. 8.....................................................................................7, 13

Fed. R. Civ. P. 13........................................................................................6

Defendants and counterclaimants Hestia Holdings, LLC, Eateries, Inc., and Fiesta Holdings, Inc. (collectively, "Purchasers") respectfully submit this memorandum of law in opposition to Sellers' Motion for Partial Dismissal of Counterclaims.[1]

## Preliminary Statement

Sellers seek dismissal of four of the eleven counterclaims asserted against them on the ground not that they are legally insufficient but instead on the ground that these claims are improperly duplicative. Sellers disingenuously argue that granting their motion should "narrow the scope of this dispute and spare the parties the cost and business disruption associated with litigating ill-conceived claims" (Mem. 6) when, in fact, no such result would follow: if, as Sellers contend, the claims are improperly duplicative, then the scope of discovery in this action would be precisely the *same* regardless of the absence of those claims. The presence of the challenged claims in no way will prejudice Sellers or cause any increased cost or business disruption despite Sellers' conclusory suggestion to the contrary.

On the other hand, depriving Purchasers of their right to assert alternative legal theories in their pleading would violate the Federal Rules of Civil Procedure's express authorization of this practice and the long-standing and repeated recognition of alternative pleading by the federal courts. At this pre-Answer and pre-discovery stage of litigation, Purchasers have pled plainly viable claims against Sellers: under relevant pleading standards, these theories must stand. Sellers' motion must be denied.

---

[1] Capitalized terms not defined herein have the same definitions as in the Answer and Counterclaims ("CC").

**Factual Background**

A.    **The Merger Agreement and Sale.**

Prior to the Sale, Sellers, through various companies, owned and operated the Restaurant

Business, which is composed of three different restaurant chains: Garfield's Restaurant and Pub,

Pepperoni Grill, and Garcia's Mexican Restaurant.  (CC ¶ 28.)

In late 2006, representatives of Purchasers' investors engaged in discussions with Sellers

concerning the possible purchase of the Restaurant Business.  (CC ¶ 29.)  Throughout this

process, Sellers consistently represented that the Companies enjoyed solid results and were

poised to grow significantly due to, among other things, extremely favorable real estate and

supply contracts they had recently negotiated.  (CC ¶ 30.)  Sellers pushed for the Sale to be

closed by year-end 2006 (even threatening that counterclaim defendant Orza would kill the deal

if it occurred any later) though, at the same time, they repeatedly delayed or failed to provide

requested due diligence information.  (CC ¶ 31.)

On December 29, 2006, Sellers and Purchasers entered into the Merger Agreement.  (CC

¶ 34.)  The Sale closed that same day, at which time Purchasers paid Sellers over $30 million in

cash and provided promissory notes in the collective amount of $2 million payable in five years.

(CC ¶ 36.)  The Merger Agreement also provided for possible additional payments to Sellers as

follows.  *First,* if the Net Working Capital exceeded a certain target amount, Purchasers agreed

to pay Sellers every dollar over that amount.  (CC ¶ 37.)  The Net Working Capital payout would

be determined on the basis of the estimated closing balance sheet through December 31, 2006, to

be consistent with GAAP, provided by Sellers at closing.  (CC ¶ 38.)  *Second*, Purchasers agreed

to pay Earnout Notes in an amount equal to the amount of EBITDA, as reflected in GAAP-

compliant 2006 audited financial statements, over $6,000,000 and less than $7,000,000,

multiplied by five. (For every dollar of EBITDA over $6 million, the Earnout Notes would increase by five dollars.) (CC ¶ 40.)

In the Merger Agreement, Sellers made numerous representations and warranties to Purchasers, including representations that: the Companies' financial statements—including the estimated closing balance sheet for fiscal year 2006—were accurate and GAAP-compliant; that Sellers had disclosed all liabilities and debts; and that Sellers were not aware of anything that might create a material adverse change in the business. (CC ¶ 44.)

Contrary to these representations, however, Sellers in fact had engaged in a wide-ranging effort to artificially inflate the finances and exaggerate the performance of the Restaurant Business to increase the proceeds they received from the Sale. (CC ¶ 70.) Purchasers uncovered this scheme—notwithstanding Sellers' active concealment (including destruction of emails and electronic records (CC ¶¶ 67, 68))—only months later, after the Sale had closed and after the Net Working Capital Payment had been paid under the assumption that it was based on true and accurate financial statements and ordinary course of business practices. (CC ¶¶ 57, 70.)

### B. Counterclaim Defendant Edwards's Employment.

J.B. Edwards had been employed in the Restaurant Business prior to the Sale. Based on Sellers' representations about Edwards's purported experience and competency prior to the Sale, Hestia offered Edwards the position of Vice President of Finance, the same title he had held prior the Sale, and he accepted. (CC ¶ 47.) Hestia assumed Edwards's previous employment contract. (CC ¶ 48.) The contract did not delineate his specific job responsibilities (or other duties), but simply stated that he would perform them "diligently, faithfully, and consistent with his assigned responsibilities." (CC ¶ 49.) Despite his contractual and fiduciary obligations to his new employer, however, Edwards, in concert with and at the behest of other Sellers, engaged in

numerous types and instances of financial malfeasance and fraud during his tenure with the Company.  (CC ¶¶ 57-63.)

One of Edwards's primary responsibilities in his role as Vice President of Finance was to coordinate and oversee the audit of the 2006 financials, including acting as the contact person for the company's auditor, Deloitte & Touche LLP ("Deloitte").  (CC ¶ 53.)  The timeliness and accuracy of the 2006 audit was particularly critical because the calculation of both the Net Working Capital payout and the Earnout Notes was to be based on the financial results of 2006.  (*Id.*)

On or about March 27, 2007, a few days before Hestia's objections to Sellers' Net Working Capital estimate were due, Edwards advised that the 2006 audit was not yet complete (in large part, as the Purchasers later discovered, due to Edwards's failure to provide accurate and timely information to Deloitte) and sent company management a purported preliminary 2006 financial statement.  (CC ¶¶ 57, 59.)  Edwards represented that the financial statement was accurate and that Deloitte had approved it, when in fact, Purchasers later discovered, Deloitte had not.  Purchasers relied on this unapproved financial statement to in calculating that it owed a Net Working Capital payout to Sellers of $219,876, which it paid.  (CC ¶¶ 57, 61.)

Purchasers came to learn that during the auditing process, Deloitte recommended to Edwards that the company make at least two adjustments to the 2006 financial statements that would have had the effect of reducing EBITDA and, therefore reducing the potential payouts to Sellers under the Earnout Notes.  (CC ¶ 61.)  Without consulting the CFO or anyone else on the management team (although perhaps in consultation with his Seller cohorts), Edward rejected these adjustments, which Purchasers later learned would have been proper.  (*Id.*)

Almost immediately after Edwards's delivery of the purported preliminary 2006 financial statement on which Purchasers based the Net Working Capital payout, having done as much as he could to manipulate the 2006 financials and delay the audit, Edwards indicated that he wanted to leave the company. (CC ¶ 64.) Rather than resign, Edwards, looking for another unearned payout, asked to be terminated formally so his rights to severance in his Employment Agreement would be triggered. (*Id.*) Purchasers refused this request, and he shortly thereafter gave notice of his resignation. (*Id.*) His last day as an employee was May 1, 2007. (*Id.*)

Upon taking over and reviewing Edwards's work after his departure, company management began discovering numerous irregularities in the financial department and results. (CC ¶ 66.) Purchasers immediately launched an extensive internal investigation, and discovered that Edwards and other Sellers had engaged in numerous instances and types of financial malfeasance and fraud (along with destruction of incriminating records), and that the financial statements that Sellers had prepared and delivered were false and misleading in many respects, as detailed below. (*Id.*)

**C.    Representative Types and Instances of Sellers' Wrongdoing.**

The Company's internal investigation revealed numerous improprieties and wrongful activities of Sellers, which are described in detail in the Counterclaims. (CC ¶¶ 70, 71-94.) These manipulations had the purpose of increasing Sellers' proceeds by millions of dollars from the Sale at Purchasers' expense. (CC ¶ 70.) The various manipulations included the improper treatment of smallwares expenses (CC ¶¶ 71-72); improper capitalization of consultants' fees (CC ¶ 73); understatement of gift card liability (CC ¶¶ 74-75); overstatement of vendor rebates (CC ¶ 76); recognition of overaccrued past rent as a current P & L item (CC ¶ 77); understatement of property tax liability (CC ¶ 78); reduction in expenses for media advertising

(CC ¶ 79); failure to disclose contract termination fees (CC ¶¶ 82-83); failure to disclose amounts owing for Sellers' personal expenses; improper transfer of cash from the Restaurant Business to Sellers' new company (CC ¶ 84) and the payment of significant amounts of cash for purported pre-Sale expenses to counterclaim defendant Orza after closing (CC ¶¶ 91-92).

### D.     Procedural History.

On or about November 7, 2007, Hestia sent counsel for Sellers' Representatives and Seller McFall a Notice of Claim pursuant to Sections 10.1(e) and 10.6 of the Merger Agreement, setting forth Sellers' wrongful practices and Purchasers' claims against them.[2] The next day, Purchasers were served with the Complaint in this action, asserting a breach of contract claim for the purported failure to issue Earnout Notes in the amount of $5 million.  On or about November 29, 2007 Purchasers filed their Answer and Counterclaims, asserting eleven counterclaims against Sellers.  Sellers now move to dismiss four of those counterclaims.[3]

---

[2] Sellers ask the Court to consider the Notice on their motion to dismiss.  (Mem. 7-8.)  The Notice informs Sellers of the general basis of Purchasers' claims, and the Merger Agreement does not require the Notice to set forth all applicable legal theories.  The Notice explicitly reserves all rights and claims not set forth therein.  Travisano Decl. Ex. A, p.7; *see also Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commun. Corp. plc)*, 93 F.3d 1036, 1046 (2d Cir. 1996) (the "purpose of notice of claims rules is to keep all parties informed") (citation and internal quotation marks omitted).  The content of this contractually required Notice does not bear on the allegations or legal theories formally pled in Purchasers' Counterclaims, and Sellers provide no authority to the contrary.

[3] Sellers disagree with the description of the claims against them as "counterclaims" and their status as "counterclaimants".  (Mem. 5 n.1.)  Their halfhearted objection is both confusing (as they seek no relief on this ground) and unavailing.  Fed. R. Civ. P. 13(a) requires that Purchasers assert all compulsory counterclaims, even against parties not already named in the litigation.  *See, e.g., Bonadio v. E. Park Research, Inc.*, 220 F.R.D. 187, 189 (N.D.N.Y. 2003) (holding that "opposing parties" under Rule 13(a) include parties "functionally identical to the actual opposing party named in the litigation" and parties "in privity with the formally named opposing parties") (citations and internal quotation marks omitted).  Sellers' Representatives are opposing parties under Rule 13(a) as individuals and as representatives because they "will benefit individually from any recovery" and "principles of equity and judicial economy" would be thwarted by separate action against them.  *Blanchard v. Katz*, 117 F.R.D. 527, 528-29 (S.D.N.Y. 1987) (recognizing exceptions to the general "opposing party" rule) (citations and internal quotation marks omitted).  Like Messrs. Burke and Grow, their fellow Sellers—and partners in the Restaurant Business and in its Sale—are opposing parties.  *See Linda Scott v. United States*, 354 F.2d 292, 299-300 (Ct. Cl. 1965) (permitting counterclaims against individual partners where plaintiff partnership was an "aggregate[] of individuals" to whom Rule 13 should not provide "a technical, artificial device for proliferating litigation and possibly escaping valid demands against them").

<u>**Argument**</u>

**I.     THE FEDERAL RULES OF CIVIL PROCEDURE EXPRESSLY AUTHORIZE PLEADING IN THE ALTERNATIVE.**

Though Sellers fatally ignore them in their motion, the Federal Rules require only "notice pleading"—a "short and plain statement of the claim". Fed. R. Civ. P. 8(a). It must be enough to put defendants on "notice" of the claims against them, but it need not be rich in detail, as relevant facts will be developed in discovery. *See* 5 Wright & Miller, Federal Practice & Procedure: Civil § 1215 ("It was the design of the rulemakers that the discovery procedures should give the parties an opportunity for securing an elaboration of the allegations and that process and not the pleadings bears the burden of filling in the details of the dispute for the parties and the court.").

In furtherance of the policy to "rel[y] on liberal discovery rules and summary judgment motions . . . to dispose of unmeritorious claims", *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 415 F. Supp. 2d 261, 270 (S.D.N.Y. 2005) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)), the Federal Rules explicitly provide that "[a] party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts". Fed. R. Civ. P. 8(e)(2). In this way, legal theories of recovery are protected while the factual landscape is developed through the contemplated discovery process. This practice has long been approved by the Supreme Court, *see United States Gypsum Co. v. Nat'l Gypsum Co.*, 352 U.S. 457, 467 (1957) (alternative claims for breach of contract and tort were proper under Federal Rules), and the lower courts. *See, e.g., Elementis Chemicals, Inc. v. T H Agriculture and Nutrition, L.L.C.*, 373 F. Supp. 2d 257, 263 (S.D.N.Y. 2005) (plaintiff "has brought its suit under both sections, pleading in the alternative, as it is permitted to do under Rule 8(e)(2) of the Federal Rules of Civil Procedure"); *Fox v. Rodel, Inc.*,

No. C.A. 98-531-SLR, 1999 WL 803885, at *9 (D. Del. Sept. 13, 1999) (permitting promissory

estoppel and breach of contract claims because "it is . . . indisputable that the Federal Rules of

Civil Procedure allow for alternative and inconsistent claims to be made in a complaint"); *In re*

*Integrated Health Svcs.*, 344 B.R. 262, 281 (Bankr. D. Del. 2006) ("the Federal Rules of Civil

Procedure allow pleading in the alternative and . . . the plaintiff need not elect the remedy it

seeks before trial unless the failure to elect would be prejudicial to the defendant").

 Thus, Sellers' assertion that Purchasers' alternative legal theories should be dismissed for

being "duplicative" is demonstrably wrong (as their failure to discuss these unquestionable

pleading rules reveals).  To the contrary, Sellers' motion to dismiss based on Rule 12(b)(6) must

be denied unless Sellers can show that Purchasers do not allege "enough facts to state a claim for

relief that is plausible on its face", *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007),

considering "all the factual allegations of the non-moving party as true and draw[ing] all

reasonable inferences in its favor". *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, -- F. Supp. 2d

--, No. 07 Civ. 2373 (DC), 2008 WL 219765, at * 1 (S.D.N.Y. Jan. 24, 2008).  At no point do

Sellers claim that Purchasers have not alleged sufficient facts in support of each claim they

challenge in this motion.  Thus, Sellers cannot meet this burden here and their motion should be

denied.

**II. SELLERS' MOTION TO DISMISS THE BREACH OF FIDUCIARY DUTY
CLAIM AGAINST EDWARDS SHOULD BE DENIED.**

 Sellers contend that the conduct alleged to constitute a breach of fiduciary duty can be

considered only a breach of Edwards's employment contract. (Mem. 16.)   To the extent Sellers

are arguing that Purchasers should not be permitted to plead alternative claims, they are simply

mistaken, as set forth above.  Moreover, Sellers do not—and cannot—dispute that Edwards had

fiduciary responsibilities to Hestia arising out of his role as an officer of the company. *See, e.g.,*

*Barbieri v. Swing-N-Slide Corp.*, C.A. No. 14239, 1997 WL 55956, at \*2 (Del. Ch. Jan. 29, 1997) (referencing "the basic proposition that directors and officers of a corporation owe fiduciary duties to the corporation and its shareholders"). Instead, they argue that these duties have been subsumed by a boilerplate contract that contains only a generic description of the way Edwards was to perform his unspecified obligations. Sellers are wrong.

Fiduciary duties arise, as Sellers' own cited cases confirm (Mem. 18), independently and simultaneously, from both contract and general common law fiduciary principles. *See Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, Civ. A. 13911, 1995 WL 662685, at \*6 (Del. Ch. Nov. 2, 1995) (whether a claim "is governed by contract or fiduciary principles depends on whether the dispute arises from rights and obligations crated by contract") (quotation omitted); *Lessig Nuclear Assocs., P.A. v. Mecklenburg*, No. 00-04246, at \*21 (Pa. Ct. Com. Pl. Feb. 24, 2003) (a fiduciary duty claim is duplicative of a breach of contract claim only "if the duty sought to be enforced arises out of the parties' contractual relationship, as opposed to their fiduciary relationship").

Thus, even without Rule 8's authorization of alternative pleading, a claimant may validly maintain claims for both breach of contract and breach of fiduciary duty simultaneously. *See RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*, No. 16873, 1999 WL 550350, at \*10 (Del. Ch. July 16, 1999) ("Conduct by an [individual] that occupies a fiduciary position . . . may form the basis of both a contract and a breach of fiduciary duty claim.") (citing *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571 (Del. Ch. 1998)); *Universal Studios, Inc. v. Viacom, Inc.*, 705 A.2d 579, 594 (Del. Ch. 1997) ("facts constitute a breach of the agreements [between the parties] and the expression of the scope of fiduciary duties within the agreements"); *see also Maillet v. Frontpoint Partners, L.L.C.*, 02 Civ. 7865 (GBD), 2003 WL 21355218, at \*3

(S.D.N.Y. June 10, 2003) (a contracting party can be liable for both breach of fiduciary duty and breach of contract).

In this case, Edwards's obligations to Purchasers were both contractual and fiduciary based on his position as Vice President of Finance and Purchasers' trust in and authorization of him to perform critical financial tasks. These responsibilities arise from general fiduciary principles long recognized by the Delaware courts. Which of his duties specifically arise from contract and which from common law, and which types of his wrongful conduct constitutes a breach of which duties, is an extremely fact intensive inquiry, ill-suited to a motion to dismiss. *See Moore Bus. Forms*, 1995 WL 662685, at *6 ("Whether or not a given claim . . . is governed by contract or fiduciary principles depends on whether the dispute arises from rights and obligations created by contract. . . . Determinations of this kind are highly fact-specific and contextual and do not easily lend themselves to a 'bright line' rule.") (citation and internal quotation marks omitted).

*RJ Associates* is instructive here. In that case, the court held that the partnership agreement alleged to have been breached included a specific reference to the defendant's fiduciary responsibility that the court found "incorporate[d] and encompasse[d] traditional fiduciary duties recognized under Delaware law". *Id.* at *9. However, because the agreement did not "modify or preempt the fiduciary duties owed" by the defendant partner, the court held that the duties owed by the parties to the partnership agreement arose not from the agreement itself but from the general fiduciary principles governing partnerships. *Id.* at *10. Thus the defendant partner's conduct could support both a claim for breach of contract and a fiduciary duty claim. *Id.* Here the outcome is even more clear: Edwards's employment contract contains

10

no reference to any fiduciary responsibility, and thus his fiduciary duties to the Company cannot possibly be subsumed into his contractual obligations. Dismissal would be unwarranted.

The cases cited by Sellers are inapposite because they involved fiduciary duties that were *specifically addressed* in contract language and did not apply federal pleading standards. Moreover, many involved contractual rights of preferred shareholders in the valuation context, and are thus not factually on point here. For example, in *Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 832-33 (Del. Ch. 2006), the fiduciary duty alleged to have been breached—that the corporation give preferred shareholders a fair valuation of their stock—was specifically mentioned in the contract between the corporation and its preferred shareholders. On this basis, the court found no difference between the fiduciary duty and the breach of contract claims.[4] Here, however, Edwards's employment contract does not address *any* particular conduct or activity, and thus it cannot be considered to expressly address, or preclude a claim based on, any actions that are governed by his common law fiduciary responsibilities.

The other cases cited by Sellers similarly do not support dismissal here for the same reason. *E.g., Solow v. Aspect Res., LLC*, No. Civ. A. 20397, 2004 WL 2694916, at *4 (Del. Ch. Oct. 19, 2004) (only "if the duty sought to be enforced arises from the parties' contractual relationship, a contractual claim will preclude a fiduciary claim," and distinguishing duties arising out "specific contractual obligations" from those arising out of "general fiduciary principles," which are not so precluded); *BAE Sys. N. Amer. Inc. v. Lockheed Martin Corp.*, No. Civ. A. 20456, 2004 WL 1739522, at *7 (Del. Ch. Aug. 3, 2004) (dismissing fiduciary duty claim based in provision of purchasing agreement which explicitly created the duty); *Lessig*

---

[4] *See also Gale v. Bershad*, No. Civ. A. 15714, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998) (dismissing fiduciary duty claim where "the claimed right to a good faith calculation of Fair Value arises from the Certificate's contractual promise that holders of Preferred shall receive 'fair value' for their redeemed shares"); *Moore Bus.*

*Nuclear Assocs., P.A. v. Mecklenburg*, No. 00-04246, at *21 (Pa. Ct. Com. Pl. Feb. 24, 2003)

(dismissing fiduciary duty claims against former partner which were grounded in violation of

specific terms of non-compete clause alleged to have been breached); *Madison Realty Partners

7, LLC v. Ag ISA, LLC*, No. Civ. A. 18094, 2001 WL 406268, at *6 (Del. Ch. Apr. 17, 2001)

(dismissing "fiduciary claims [which] relate to obligations that are *expressly treated* in the

Partnership Agreement" alleged to have been breached) (emphasis added).

Unlike the facts in the cases cited by Sellers, Edwards's contract does not expressly

reference any particular obligations, let alone particular fiduciary obligations. As a result, the

breach of fiduciary duty claim is not precluded or subsumed by any specific contractual

provision. Sellers' motion to dismiss this claim, and the corresponding claim for aiding and

abetting breach of fiduciary duty, must be denied.[5]

## III. SELLERS' MOTION TO DISMISS THE CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DENIED.

Sellers argue that Purchasers' claim for breach of the covenant of good faith and fair

dealing should be dismissed because it "duplicates" the breach of contract claims. (They do not

claim that Purchasers' have failed to plead sufficient facts in support of this claim, which is the

relevant standard.) (Mem. 8.) But the fact that Purchasers have pled in the alternative is not

only insufficient grounds for dismissal, it is expressly sanctioned by the Federal Rules of Civil

Procedure and applicable law, as set forth above.

Accordingly, courts have repeatedly denied motions to dismiss on the grounds that a

claim for breach of the covenant of good faith and fair dealing is duplicative of a claim for

---

*Forms,* 1995 WL 662685, at *6 (dismissing fiduciary duty claims grounded solely in preferred shareholders' contractual rights as duplicative of their contract claims).
[5] Sellers' sole argument for dismissal of Count V for aiding and abetting breach of fiduciary duty against Orza is that it cannot exist absent a viable claim for breach of fiduciary duty by Edwards. (Mem. 20.) Because the breach of fiduciary duty claim is properly pled, there is no basis for dismissing the aiding and abetting claim.

breach of contract. For example, in *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004), the court upheld plaintiff's claim for breach of the implied covenant of good faith and fair dealing where the same operative facts also supported the plaintiff's breach of contract claim, because "the Federal Rules explicitly permit a party to plead causes of action in the alternative, 'regardless of consistency'". *Id.* (quoting Fed. R. Civ. P. 8(e)(2)). Thus, the Court observed that "while Xpedior may not press both claims to *judgment*, it is free to litigate both". *Id.* (emphasis in original); *see also MCI Worldcom Commc'ns v. LD Wholesale, Inc.*, No. 01 Civ. 6310 (RO), 2002 WL 1483886, at *1 (S.D.N.Y. July 9, 2002) (denying motion to dismiss alternative claim for breach of implied covenant of good faith and fair dealing because dismissal would violate the liberal policy of Rule 8(e)(2)) (internal quotation marks and citation omitted).

Very recently, in *M-101 LLC v. iN Demand LLC*, No. 06 Civ. 12938 (DLC), 2007 WL 4258191 (S.D.N.Y. Dec. 3, 2007), the court refused to dismiss a purportedly duplicative claim for breach of the covenant of good faith and fair dealing since "the defendant may assert technical defenses to the breach of contract claim which would fail to defeat [the] alternative claim" and retaining the claim would not "affect the scope of discovery". *Id.* at *3.

The same result should follow here. Sellers' bare assertion that dismissal would narrow this dispute and avoid costs and disruption (Mem. 6) is patently false—and it is this motion that has caused needless distraction and litigation costs. The scope of discovery will remain exactly the same following the Court's decision on this motion, and the only harm here would be to Purchasers following any dismissal.

That is because Purchasers' claims for breach of the covenant of good faith and fair dealing may become critical to addressing certain types of Sellers' misconduct. At this time,

Sellers have not answered the complaint and the Court has had no occasion to construe the Merger Agreement. It is entirely possible that Sellers, at a later stage, will offer up a technical defense to the contract or claim that the contract does not cover certain of the wrongdoing that the counterclaims identify.[6] Should such defense prevail, a claim for breach of the covenant of good faith and fair dealing would unquestionably no longer be rendered "duplicative" and its dismissal now, before Sellers' defenses have been pursued, would unfairly result in prejudice to Purchasers.

None of the cases cited by Sellers is to the contrary. Indeed, none of these cases considered or discussed the Federal Rules of Civil Procedure, which expressly sanction pleading in the alternative.[7] In *Cerberus Int'l, Ltd. v. BancTec, Inc.*, 791 N.Y.S.2d 28, 30, 16 A.D.3d 126, 127 (1st Dep't 2005), the court dismissed the claim for breach of the covenant of good faith and fair dealing where the term plaintiffs sought to imply, unlike here, was "inconsistent with other, express terms of the contract". Similarly, in *Moore Bus. Forms*, the court did not dismiss the claim for breach of the covenant of good faith and fair dealing on the grounds that it was duplicative. 1995 WL662685, at * 9. Rather the court found that the claim could not survive because the terms the plaintiff in that case urged the court to imply were "expressly addressed by

---

[6] Footnote 2 of Sellers' Memorandum, in which Sellers claim that terms covering past acts cannot be implied into the Merger Agreement, provides a preview of such an argument which, in any event, is unavailing. First, Purchasers have indeed alleged significant wrongful conduct that took place after the Merger Agreement was entered into, during the period that Edwards, at the direction of and with the assistance of other Sellers, continued to implement Sellers' efforts to manipulate the Company's financials. (CC ¶¶ 51-69.) Moreover, the argument that implied duties cannot extend to conduct preceding closing is belied by the presence in the Merger Agreement of numerous express representations and warranties relating to conduct occurring prior to the agreement's execution (CC ¶¶ 35, 44-45, 100-03), and Sellers offer no reason why implied duties should differ in this respect from express duties.

[7] Indeed, the cases they cite were all decided under Delaware substantive law which does not apply to the federal procedural rules of pleading.

the Purchase Agreement". *Id.* Notably, Sellers do not argue here that the Merger Agreement addresses and precludes a claim for the wrongdoing alleged in the counterclaims, and Sellers' wrongful conduct in no way was expressly permitted by the Merger Agreement.[8]

For these reasons, Sellers' motion to dismiss the claim for breach of the covenant of good faith and fair dealing should be denied.

## IV.    SELLERS' MOTION TO DISMISS THE PRIMA FACIE TORT CLAIM SHOULD BE DENIED.

Sellers argue that Purchasers' claim for prima facie tort should be dismissed because the cause of action is disfavored, because such a claim must be based on "otherwise lawful" conduct, and because the claim addresses conduct that "falls squarely within the parameters of more traditional tort claims". (Mem. 15.) Each of these arguments fails, and Sellers' motion to dismiss this claim should be denied.

*First*, as set forth above, Purchasers are entitled to plead claims in the alternative. Thus, courts have permitted claims for prima facie tort to be pled together with other torts. *See Hughes v. Patrolmen's Benevolent Ass'n of the City of New York, Inc.*, 850 F.2d 876, 882 (2d Cir. 1988) ("where a traditional tort remedy exists, a party will not be foreclosed from pleading, as alternative relief, a cause of action for prima facie tort") (citation and internal quotation marks omitted); *see also Stallings v. U.S. Electronics Inc.*, 707 N.Y.S.2d 9, 11, 270 A.D.2d 188, 189 (1st Dep't 2000) (reinstating prima facie tort claim against one of the defendants based on propriety of pleading it in the alternative). While facts developed in discovery may eventually

---

[8] *Izquierdo v. Sills*, No. 15505-NC, 2004 WL 2290811 (Del. Ch. June 29, 2004), is likewise distinguishable because it was decided after considerable discovery. Purchasers object to the dismissal of their claim for breach of the covenant of good faith and fair dealing at this *early stage* of the litigation—before information about the extent and type of Sellers' wrongdoing is fully developed in discovery.

support another tort theory, Sellers' characterization of prima facie tort as "disfavored" in no way changes its viability here at the pleading stage.

Sellers also argue that the claim must be dismissed because it is not based on "otherwise lawful conduct"—indeed, they characterize the allegations against them as conduct that "cannot credibly be categorized as being otherwise lawful". (Mem. 13.)[9] Fatally, however, Sellers point to no authority—and we have found none—confirming or otherwise discussing the contours of conduct sufficiently "unlawful" as to foreclose a claim for prima facie tort on a motion to dismiss.

Sellers also argue that the claim for prima facie tort should be dismissed because it "falls within the ambit of more traditional tort claims". (Mem. 13.) The only example they give of a tort claim under which Sellers' conduct falls, however, is the fraud claim asserted against Edwards alone. (Mem. 15.) In doing so, they miss the point entirely. Purchasers asserted the fraud claim against Edwards *because Edwards's conduct supports a fraud claim against him alone*, while the prima facie tort claim is brought against *all* Sellers because their conduct, which on the basis currently available information does not support fraud, constitutes an "intentional infliction of harm . . . which do[es] not fall within the categories of traditional tort". *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. Ct. 1983). Thus, the case cited by Sellers, *Brett v. Berkowitz*, Civ. A. No. 91C-12-251, 1995 WL 270146 (Del. Super. Ct. Apr. 13, 1995), is inapposite. In that case, the plaintiff brought a claim for intentional infliction of emotional distress and prima facie tort against the *same* defendant based on precisely the same conduct. This is not the case here, where a fraud claim has not been alleged against all the Sellers. In this

---

[9] We expect that in the future, Sellers will maintain that their conduct not only was "lawful" but was justified, thereby supporting, rather than undercutting, the propriety of this cause of action even accepting Sellers' argument that lawful conduct is required.

situation, a claim for prima facie tort performs precisely the role it was meant to play: it addresses wrongdoing that does not fit into a traditional tort category.

## Conclusion

For the reasons set forth above, Purchasers request that Sellers' motion for partial dismissal of counterclaims be denied.

Dated:  New York, New York
           February 15, 2008

DEWEY PEGNO & KRAMARSKY LLP


By:    /s/ Keara A. Bergin
        Thomas E. L. Dewey (TD-6243)
        Keara A. Bergin (KB-0831)

220 East 42nd Street
New York, New York 10017
(212) 943-9000

*Attorneys for Defendants and Counterclaimants*

17